## BRYAN CALLAGHAN ET AL. v. W. H. IRVIN.

### Decided November 1, 1905.

**1.—Claim of Office—Threats to Oust—Injunction.**

It is settled law that an incumbent of a public office may by injunction restrain unauthorized persons from exercising his functions, undertaking to remove him, or interfering with the office or with what appertains to the office.

**2.—Charter of City of San Antonio—Powers of Police and Fire Commissioners.**

There is no conflict between the provisions of the city charter giving the council power to establish a police force and regulate the same, and to establish, regulate and maintain a fire department, and those provisions which confer upon the police and fire commission the charge, management and control of said departments and the selection, management, control and discharge of all persons serving in same and to make rules and regulations for its management and for the selection and discharge of all persons serving in same.

**3.—Tenure of Office—Charter Construed.**

The charter providing that "all persons selected by said board to serve as policemen or firemen shall hold their positions during good behavior, and shall not be discharged for political reasons, and in no event except for good cause, and after charges have been filed and due hearing thereon given," held, not to give life tenure to appointees.

**4.—Value of Office—Jurisdiction of District Court.**

If the office was of no money value, the District Court would have had jurisdiction under the clause of the Constitution giving the District Court jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided; if it had a money value this would depend not only on the monthly salary, but the length of time the term would continue.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Jos. Ryan, Houston Bros.,* and *R. J. Boyle,* for appellants.—Where a claim of office is asserted, injunction is not the proper remedy to secure or retain possession of the office and the custody and control of the property incident thereto. Riggins v. Thompson, 70 S. W. Rep., 578; McAllen v. Rhodes, 65 Texas, 348, 23 Am. and Eng. Ency. of Law (2d ed.), p. 351.

The courts will not read the Constitution into the statute and change its terms and give it a constitutional scope where no apparent necessity exists for such course. Where conforming such statute to constitutional limits would be a distortion of the legislative intent and would also produce a hopeless conflict and confusion in the statute, it will be allowed to fall by its own vice. Kimbrough v. Barnett, 93 Texas, 301; Rowan v. King, 56 S. W. Rep., 103; Ex parte Levine, 10 Texas Ct. Rep., 870.

Where several sections and paragraphs of a city charter are found

in direct conflict with one another, favor in construction will be given to those sections which are constitutional and legal and valid as against another section which will require judicial aid, construction and modification before it can be put into effect. Where one section attempts to confer a life term of office on the policemen and firemen appointed under a commission, and other paragraphs confer on the city council and mayor the power to appoint for a legal term, the former must yield. Same authorities.

The constitutional term of office in this State is two years, and a party holding an office beyond that term has no legal right or title thereto and can not maintain suit by injunction to perpetuate himself in said office or restrain the proper authorities from appointing his successor. State ex rel. Bovee v. Catlin, 84 Texas, 48.

Jurisdiction does not lie in the District Court to try title to an office where the money value of the office is less than five hundred dollars. This is the rule under our laws, whether such trial to the right of office be by injunction or other procedure. State v. Owens, 63 Texas, 261; State v. DeGress, 72 Texas, 242; City of Dallas v. State, 73 Texas, 370; Krakauer v. Coples, 23 S. W. Rep., 1036.

The court erred in rendering judgment in favor of plaintiff herein because the evidence in this case shows that the possession, control and custody of all property of the police department in said city is vested in the mayor and city council thereof.

*Ogden & Brooks, Wm. Aubrey, L. G. Denman, H. C. Carter,* and *John H. Clark,* for appellee.—It is the right and duty of a public officer to protect the property of the office, and when necessary may have injunction. Caruthers v. Harnett, 67 Texas, 127.

Where one is lawfully in possession of an office injunction is the proper remedy to prevent an intruder from taking possession of the office and property pertaining thereto, and inquiry can be made into the authority of the body attempting to make an appointment under such proceeding. Ehlinger v. Rankin, 29 S. W. Rep., 240; Brumby v. Boyd, 66 S. W. Rep., 874.

Injunction will issue in many cases where there is a legal remedy. Rev. Stats., 2989; 87 Texas, 330; 73 S. W. Rep., 83; 63 Texas, 223; Ib., 349; 91 Texas, 129; 69 S. W. Rep., 543.

After officer removed without authority he may be restored by mandamus. Johnson v. City of Galveston, 33 S. W. Rep., 151.

It is to the interest of the public that the office be filled. McAllen v. Rhodes, 65 Texas, 353.

The Legislature had the power to create the commission. Brown v. City of Galveston, 97 Texas, 1.

The commission having been properly provided for and established, it is valid with all its powers, and if an unlawful privilege is attempted to be given to one of its appointees the vice does not reach the heart and main purpose of the act and the vice alone will be discarded. Charter of the city, special laws 1903, p. 322, and especially sections 34a and 17; City of Houston v. Estes, 79 S. W. Rep., 850; Proctor v. Blackburn, 67 S. W. Rep., 548; Cawthorn v. City of Houston, 71 S. W. Rep., 329.

The city council only has such authority as is specially delegated to it. City of Cleburne v. Gulf, C. & S. F. Ry., 66 Texas, 461; City of Brenham v. Waterworks, 67 Texas, 542.

JAMES, CHIEF JUSTICE.—Appellee filed his original petition on May 31, 1905, alleging the city of San Antonio to be a municipal corporation existing by special charter, with authority to establish a police department; that in March, 1903, in accordance with the provisions of the charter then in force, appellee was elected city marshal by the council and commissioned same day by the mayor, and on same day qualified as city marshal and took charge of the police department, and has been acting in said capacity ever since, having possession of the records, books, papers and property of said department and assumed control of all persons serving as subordinates therein. That the present city charter, which became effective on July 29, 1903, provides that the city marshal with other officers of the city and all persons serving in the police department shall hold their offices until their successors, if any, shall be appointed and qualify. That said charter provides that the police and fire departments of the city shall be placed under civil service regulations and controlled by a board of three commissioners to be known as the police and fire commission, which board shall have the care, management and control of the police and fire departments of said city, and that in conformity with this provision the mayor appointed and the council confirmed Floyd McGown, Frank Lange and C. M. Stone as said commission on January 2, 1905, and commissions were issued to them as required, and that said persons will qualify under said appointment on the 1st day of June, 1905.

That on May 9, 1905, the defendant, Bryan Callaghan, was elected mayor, and the other defendants (except James Van Riper) aldermen of said city and that they would qualify on June 1, 1905.

Then follow allegations to the effect that notwithstanding the above facts, the said mayor and aldermen elect assert the invalidity of said charter provision and are claiming power to appoint a city marshal and police force, and are threatening (this petition was filed on May 31st) to qualify immediately after midnight on the morning of June 1, 1905, hold a council meeting, and appoint and confirm defendant James Van Riper, or some other person, as city marshal, and other persons to other positions in said department, and threaten to take forcible possession and control of said police department and of the office of city marshal and seize and take from plaintiff the property appertaining to said department and oust this plaintiff from said office of city marshal and deprive him of the control thereof, and threaten to repeal the ordinances establishing a police department and providing for the maintenance thereof, and threaten to appoint special policemen to discharge such duties and to deprive this plaintiff and persons serving under him from discharging the duties imposed on them as officers in said department.

That said threatened acts will be wholly without authority of law, and this plaintiff will have no right to deliver the said office to defendant Van Riper or to any other person so appointed, and defendants

will have no legal right to interfere with plaintiff's possession thereof, or the person serving therein, or of the property under his control, and will be trespassers and wrongdoers in so attempting, etc.

Petitioner prayed for a temporary injunction (and for perpetual injunction on final hearing) to restrain defendants:

1. From repealing any ordinance establishing the police and fire departments and providing for the maintenance thereof for the fiscal year ending May 31, 1906.

2. From appointing or attempting to appoint or confirm a city marshal, or any subordinate in the police department.

3. From interfering in any manner with plaintiff, and those serving under him, in the discharge of the duties of the department, and from interfering with their possession, management and control of the records, books, papers and property belonging to said department, and from interfering with plaintiff in the management and control of persons serving under him, in any manner whatsoever.

4. From appointing or attempting to appoint any special policemen to take charge of the police department, or to discharge the duties thereof.

No question arises in reference to the temporary injunction.

The further pleadings in the case we think we need only state as we find them given in appellant's brief thus: Defendant answered by general and special demurrers which were overruled. Defendant also answered by general denial and special denial. Plaintiff then filed his supplemental petition alleging that on June 1, 1905, the Police and Fire Commissioners entered upon the discharge of the duties of said office and that thereafter the management and control of the police department of said city became vested in them and that all persons serving in said department are under the control and management of the commission.

The case was heard on June 9. The judgment declares that the court concluded that the power of appointing the city marshal and chief of the police department of the city was vested in the Police and Fire Commissioners, and that the mayor and members of the council have no such power and that they were threatening to and intended to exercise said power of appointment, and but for the restraining order would have appointed defendant Van Riper, or some person other than plaintiff to fill said office and take possession and assume control and management thereof, and proceeded finally to enjoin them from making such appointment and from directly or indirectly by force, threats or otherwise interfering with or molesting plaintiff as city marshal and chief of the police department in the performance of his duties and in the execution of his powers and authority of such officer, or from interfering with him in any manner in the possession or control of the property appertaining to said department.

The final injunction merely restrained defendants from appointing or attempting to appoint James Van Riper or any other person as city marshal and chief of the police department of the city and from interfering with or molesting plaintiff in the performance of his duties as city marshal and chief of the police department, or in the possession and control of the property appertaining to said department.

Under appellant's first assignment are presented several propositions.

It is contended that where a claim of office is asserted, injunction is not the proper remedy to secure or retain possession of the office and the custody and control of the property incident thereto. It is settled law that an incumbent of a public office may by injunction restrain unauthorized persons from exercising his functions, undertaking to remove him or interfering with the office, or with what appertains to the office.

While it is true that the plaintiff was required to establish by proof some right to the office he occupied, as the basis for his relief, the case alleged and made was not for the trial of title to the office. It presented a case of an incumbent seeking to protect himself in the exercise of the office against the threatened act of third persons, who as alleged, and as found by the court, had no right or authority in the premises.

It has been held that even a *de facto* officer has a remedy by injunction against interference of that character. Beach on Inj., sec. 1380; 2 High on Inj., sec. 1315; Guillotte v. Poincy, 6 So. Rep., 507; Poyntz v. Shackleford, 54 S. W. Rep., 858. But certainly if the proof shows him to be the officer *de jure,* as plaintiff was held to be in this instance, and so also regarded by us, he had such remedy. The case of Riggins v. Thompson, 70 S. W. Rep., 578, which is relied on did not present this character of case. The facts of that case are not fully stated in the published opinion, but we infer that the foundation for an impeachment trial was duly laid by charges preferred. After that the city council was acting as a tribunal under legislative authority and its proceedings would not be restrained or supervised by a court of equity. See Stahlhut v. Bauer, 70 N. W. Rep., 496.

The case of McAllen v. Rhodes, 65 Texas, 348, also relied on, was a controversy between individuals claiming title to an office, the incumbent being the defendant. It was held that *quo warranto,* or an ordinary civil suit for the office, was the remedy, and that in such circumstances injunction against the incumbent was not. This case presented wholly different conditions from the one at bar. That was an action by a claimant of the office against the one in possession thereof. And *quo warranto,* or a suit of that nature, is undoubtedly the appropriate proceeding by one out of possession of the office against the incumbent.

Plaintiff had no adequate remedy at law. He was not required to surrender the office to persons having no title or color of title thereto and look to courts of law for relief. The relief which the exigency of the case demanded could not be secured in that way. The claimant in possession can not properly resort to *quo warranto,* the purpose of such a proceeding being to recover the office or to oust the occupant. The occupant, who already has the office and is in possession, needs no such relief and his sole remedy against unwarranted intrusion or interference, would seem to be injunction, until the adverse claimant should establish his title to the office in a court of law. Under our blended system this would present no difficulty as it might be established in the same suit upon proper pleadings.

In the present case, if the charter does not empower the city council to appoint plaintiff's successor, nor to do the acts threatened with

reference to the possession and control of the office by plaintiff, every such act would have been unlawful, and the appointee would have been a trespasser upon the office if he undertook to assume its functions. The council and he would have stood upon no higher footing than ordinary intruders.

On the other hand if the council had power under the charter to appoint plaintiff's successor, it is well established that a court of equity would not undertake to control them in the exercise of such power, and injunction would not be granted.

What has been said disposes of the fifth and second assignments.

The question, therefore, is the existence or not of such power in the council. This involves the validity of the charter provision creating the Police and Fire Commission.

The constitutionality of a provision for a Police and Fire Commission is not questioned by anything we see in the brief. Nor is it clear that the brief makes any point against the constitutionality of the provision of this charter creating a commission, except to charge that it undertook to give to the appointees of the commission a life tenure. This point will be dealt with under the next assignment. It seems also to be intended by the brief to allege that the provision fails by reason of hopeless conflicts in the provisions of the charter. We perceive no conflicts that appear to be such after taking all the provisions of the charter into consideration and giving them due effect.

It is true that there exists a provision giving the council power to establish a police force and regulate the same, and to establish, regulate and maintain a fire department. This does not really conflict with the power conferred in terms on the commission, which is confined to the charge, management and control of said departments, and the selection, management, control and discharge of all persons serving in same, and to make rules and regulations for its management and for the selection and discharge of all persons serving in same. No one, we think, would contend that the commission would have power under this grant to create or establish a fire or police department. Their functions would be called into operation after the departments had been created by the council. Nor would the commission have power to fix the number of men to serve the city in either department, or to fix their salaries, or provide means for the maintenance of the departments. These matters also appertain to the council. The Legislature would naturally have assumed that if the council created fire and police departments for the service of the city, it would provide for them. The power given the council to establish, regulate and maintain a fire and a police department is not incompatible with the exercise by the commission of the powers conferred upon it. Nor is the power of appointment given the commission in conflict with the general powers of appointment conferred on the mayor, because the commission clause expressly states that the power of appointment given the mayor elsewhere, and the power given to the city council, shall not apply to persons serving in these departments.

Under another proposition the point seems to be that the article of the charter providing for a Police and Fire Commission is void, because the term of office of their appointees was not fixed, and the pur-

pose of the provision was to secure a life tenure of office to all its appointees.

The article does not in terms fix the term of office of the appointees for any period of time. It says: "And all persons selected by said board to serve as policemen or firemen shall hold their positions during good behavior, and shall not be discharged for political reasons, and in no event except for good cause, and after charges have been filed and due hearing thereon given." The Legislature can not, from this language, be credited with having intended these appointees to hold their places for life, or for a longer period than is permitted by the Constitution. Had it said that they should hold for life, or for, say, four years, during good behavior, the matter would have stood differently. As it is, the constitutional limit of two years, if applicable, would be read into the law. (Proctor v. Blackburn, 67 S. W. Rep., 548; City of Houston v. Estes, 79 S. W. Rep., 848; Cawthorn v. City of Houston, 71 S. W. Rep., 329; Albers v. City of Houston, 73 S. W. Rep., 1084.)

Third proposition: "Where one section of the charter attempts to confer a life term of office on the firemen and policemen appointees of the commission, and other portions confer on the mayor and council power to appoint for a legal term, the former must yield."

Upon this proposition we need only refer to what has been said, and to that provision of the charter creating a Police and Fire Commission which says that "the power of appointment given the mayor elsewhere in this charter, and the power given the city council, shall not apply to persons serving in the police and fire departments of the city."

The fourth assignment is that the petition did not show that the value of the office, the title to which plaintiff is seeking to try, exceeds $500 in value, and, on the contrary, shows that whatever right he may have in said office is terminable at this time, and is of no money value.

This attacks the jurisdiction of the court. If the office was of no money value the County Court could not have had jurisdiction, and the District Court would have had, under the clause of the Constitution giving the District Court jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided. If it had a money value, this would depend not only on the monthly salary, but the length of time the term would continue. Plaintiff's tenure was until his successor should qualify. When this suit was filed. it could not be determined when this would take place, hence the value could not be alleged. While this suit may have required proof of plaintiff's right to the office, or his possession thereof, as the *de facto* officer, as necessary to the relief he sought, the real character of the suit, as has been said, was not to recover the office, but to prevent his being molested therein by unlawful interference. Of such matter no other court has been given jurisdiction. This jurisdictional question has been so fully discussed in the companion cases this day decided, involving practically the same question, that we need do nothing further than to refer to them.

It is true that this plaintiff received his appointment on March 4, 1903, and that he had held the office over two years when he filed this suit, but he was entitled to hold it until his successor qualified. He was the officer *de jure* at the time, but, if he was not, the fact of his

being in possession of the office, exercising its functions, was, we think, under the circumstances, sufficient title to entitle him to protect the office from invasion by persons who have no title or color of title thereto. We therefore overrule the third, sixth and seventh assignments of error.

By the eighth assignment it is insisted that the court erred in rendering judgment in favor of plaintiff because the evidence shows that the possession, control and custody of all the property in the police department is vested in the mayor and council. We have carefully read the statement made to support this proposition, and find nothing stated to sustain it. Besides, the commission was given charge of the department, which would give them, and not the mayor and council, charge of the property appertaining to the department. It was proved that plaintiff had been regularly appointed city marshal, and was the head of the police department, and was in possession of the property belonging to that department, and had been ever since he was appointed.

We find that the material facts alleged in the pleadings of plaintiff were proved, and that they sustain the decree.

*Affirmed.*

Writ of error refused.