### TEMPLE INDEPENDENT SCHOOL DIST. et al. v. PROCTOR.

#### No. 8567.

Court of Civil Appeals of Texas. Austin.

Oct. 21, 1936.

Rehearing Denied Nov. 12, 1936.

1048

Sam D. Snodgrass and Winbourn Pearce, both of Temple, and Greenwood, Moody & Robertson, of Austin, for appellants.

J. B. Daniel, DeWitt Bowmer, and Cox & Brown, all of Temple, for appellee.

BAUGH, Justice.

Appeal is from an order of the district court of Bell county refusing to dissolve a temporary injunction. The injunction was granted in chambers on August 13, 1936, in favor of L. C. Proctor, superintendent of schools of the Temple Independent School District, against the city of Temple, the Temple Independent School District, and its board of trustees. The grounds alleged in the petition for said injunction were substantially as follows: That the boundaries of the city of Temple and the school district were coextensive; that Proctor had been for many years superintendent of the public schools of said district, his current contract expiring on August 31, 1936; that the board of school trustees had re-elected him on February 10, 1936, for another 2-year term, which action was on March 9, 1936, reconsidered and he was elected for a 3-year term beginning September 1, 1936,

and a written contract executed between him and the school board accordingly; that the city of Temple operates under a home rule charter. This charter provides for the appointment of the members of the school board by the city commissioners, who were elected; makes the secretary of the board of commissioners also the secretary of the school board; and section 4 of article XII of said charter, which was adopted in 1922, provides:

"Section 4. Right Of Board Of Commissioners To Rescind Pecuniary Liability Of School Board: Any order, resolution or vote of the School Board by which any pecuniary liability shall be incurred, or any funds expended or appropriated, may be rescinded by a majority vote of all members constituting the Board of Commissioners, and it shall be the duty of the secretary of said School Board, immediately after each meeting of the board, to furnish the Board of Commissioners with a true copy of the minutes of the proceedings of the School Board; and any action taken by the Board of Commissioners rescinding any such act on the part of the School Board shall cause such act to become void, unless at the next meeting of the School Board it shall again be adopted by the affirmative votes of all members of said School Board."

Proctor further alleged that, after March 9, 1936, and prior to May 26, 1936, nine separate meetings had been had by the board of city commissioners at none of which any action was taken by the commissioners on the action by the school board of March 9th, electing him superintendent; that such failure to act thereon was deliberate and intentional because of the city election of commissioners held on April 7, 1936; that after such city election the city commissioners appointed a new school board of trustees, and on May 26, 1936, without notice to Proctor or opportunity given him to be heard, and without any charges against him, the board of commissioners passed an order rescinding the action of the school board in electing him; that thereafter the new school board took no action on the attempted veto of the city commissioners until July 1, 1936, when they passed a resolution declaring the office of superintendent of schools vacant, elected one R. M. Hawkins superintendent for one year beginning September 1, 1936, and employed him in an advisory capacity on a salary from July 16th to September 1, 1936; that he (Proctor) did not know until July 1, 1936, whether he would be retained as superintendent or not, at which time it was too late for him to secure a position elsewhere. Proctor thereupon appealed to the state superintendent of public instruction as provided by law, who on August 5, 1936, held his contract of employment valid and ordered the school board to comply with it. The school board thereupon appealed from the decision of the state superintendent to the State Board of Education, which on August 11th affirmed the action of the state superintendent. That with full knowledge of the decision of the state superintendent in the premises the Temple school board on August 6, 1936, passed a resolution requesting Proctor to surrender his office and all equipment to R. M. Hawkins, and advised all teachers and employees of the Temple schools to recognize Hawkins as superintendent. In brief that said school board was ignoring and refusing to follow the decisions of the state superintendent and the State Board of Education, and was preparing to illegally deprive appellee of his office, and to illegally pay out moneys of the school fund to Hawkins.

Appellee's prayer for relief in his petition was as follows: "Wherefore, premises considered, your petitioner prays your Honor to issue writ of injunction restraining Temple Independent School District, W. A. Chernosky, George G. Yates, Mrs. H. B. Mason, Mrs. Ida Temple, O. Richards, George S. Cotton, and C. R. Tucker, as Trustees of said Temple Independent School District, and each of them, from installing, or recognizing R. M. Hawkins, or any other person other than petitioner, as Superintendent of Public Schools of Temple Independent School District; and restraining said defendants, and each of them, from depriving your petitioner of the office and equipment, and from interfering with him in any manner in the exercise of the powers, rights and privileges of the office of Superintendent of Public Schools; and restraining said defendants, and each of them, from paying to the said R. M. Hawkins any sum or sums of money whatsoever out of said school funds, and from misappropriating said school funds in any manner whatsoever. And that a mandatory order of this court be entered requiring Temple Independent School District, W. A. Chernosky, George

G. Yates, Mrs. H. B. Mason, Mrs. Ida Temple, O. Richards, George S. Cotton and C. R. Tucker, as Trustees of said Independent School District, to observe the rulings of the State Superintendent of Public Instruction, and the State Board of Education, and requiring said defendants, and each of them, to fully carry said rulings into effect, and in all respects to comply with said contract of employment so upheld by said school authorities, pending any further appeal of said cause of action, and until such time as a court of competent jurisdiction may reverse said rulings; for cost of suit, and for such other and further relief, special and general, to which your petitioner may be entitled."

The judge's fiat granting such relief was that the clerk "issue a writ of injunction in all things as prayed for in the first sentence of the prayer of the within petition, upon the petitioner executing to the adverse parties a bond, etc."

The writ issued to the defendants restrained them as prayed for, "until the further order of said District Court, to be holden within and for the County of Bell *. * * on the 3rd Monday in October * * * when and where this writ is returnable."

Thereafter appellants filed a motion to dissolve said injunction, a hearing was had thereon on August 27, 1936, and on August 29th the court refused the application to dissolve. Hence this appeal.

The first contention made by appellants is that the prayer in appellee's petition was for an injunction generally and was not sufficient to authorize the issuance of the temporary injunction appealed from, citing particularly Ely v. Elliott (Tex.Civ.App.) 55 S.W.(2d) 1080, and the cases therein cited.

The rule deduced from these and other cited cases in 24 Tex.Jur. 236, § 179, is that, "The prayer should specify the nature of the injunctive relief sought— whether a restraining order, a temporary injunction or a perpetual injunction. A temporary injunction may not be granted unless prayed for, nor may such a writ be granted on a prayer for a permanent injunction."

It is to be noted that, in the first sentence of the prayer above set out, in response to which the original writ issued herein was granted, only an injunction is asked for, without specifying the character of injunction sought. This part of the prayer asked for a restraining order. The second sentence of the prayer asked for a mandatory order "pending any further appeal of said cause of action, and until such time as a court of competent jurisdiction may reverse said ruling." (That is, the ruling of the state superintendent.) While appended only to the latter portion of such prayer, we think it is fairly inferable that any and all injunctive orders applied were intended and applied for only until a trial of the controversy here involved could be had. Consequently only a temporary order could properly have been issued, and the failure eo nomine to specify the relief sought, when in the nature of things only such temporary relief was sought, should not be fatal to the sufficiency of the pleadings. See Wilkenfeld v. Ballard (Tex.Civ.App.) 84 S.W.(2d) 279.

And whatever may have been the vice, if any, in the original order entered ex parte by the trial court, the order entered, after hearing, overruling the motion to dissolve, that such original order "be and the same is hereby continued in full force and effect until the further orders of this court entered in term time," constituted it a temporary injunction.

Appellants also urge, as fundamental error, that the court was without jurisdiction to issue such injunction restraining them from "paying to the said R. M. Hawkins any sum or sums of money out of the School Funds of Temple Independent School District, and from misappropriating said school funds in any manner whatsoever." This on the ground that, before such relief could be granted, Hawkins must be a party to the suit. Appellee's petition alleged that the school board had in July declared the office of superintendent vacant and had elected and made a contract with Hawkins as superintendent and were recognizing him as such. Manifestly Hawkins is an interested party in the final outcome of the suit, and should be a party to the hearing upon the merits. He was not made a party. See County School Trustees v. Common School District (Tex.Civ.App.) 284 S.W. 306; McCharen v. Bailey (Tex.Civ.App.) 87 S.W.(2d) 284; 24 Tex.Jur. § 163, p. 215. But failure to make him a party does not necessarily render the temporary injunction void as to those against whom

it was issued. The effect of such temporary injunction, though some of its provisions may be too indefinite to be enforceable (e. g., restraint against misappropriating said school funds in any manner, without specifying what would amount to a misappropriation), is nothing more nor less than to maintain in force, as the status quo to be preserved, the order of the state superintendent and of the State Board of Education issued in the premises, until same should either be upheld or set aside by the court after a hearing on the merits.

■ Appellants also attack on numerous grounds the sufficiency of appellee's pleadings to sustain the granting of any injunctive relief. We do not deem it necessary to discuss these contentions in detail here. It is not controverted that, under his former contract, Proctor was entitled to hold his office until September 1, 1936, nor that he was in possession of such office. That his position was an office for which a suit may be maintained is now settled law. Kimbrough v. Barnett, 93 Tex. 309, 55 S.W. 120. That his legal possession thereof, as against illegal attempts to deprive him of it, may be protected by injunction, has likewise been definitely determined. Callaghan v. McGown (Tex.Civ.App.) 90 S.W. 319 (writ ref.); Callaghan v. Tobin, 40 Tex.Civ. App. 441, 90 S.W. 328 (writ ref.); Callaghan v. Irvin, 40 Tex.Civ.App. 453, 90 S.W. 335 (writ ref.). The injunction against interference by others with his possession of such office at least up to September 1, 1936, was clearly authorized.

■ The motion to dissolve the injunction, among other things, attacks as void the rulings of the state superintendent and that of the State Board of Education, wherein the new contract of Proctor was upheld and the school board ordered to comply with it. Particularly do they urge that the action of the commissioners of the city of Temple is not subject to review by the state superintendent because, under the provisions of article 2656, R.S., the state superintendent's review is confined to the "rulings and decisions of subordinate school officers"; and that such city commissioners are not subordinate school officers within the purview of such statute. It is also contended that the grounds on which the state superintendent and State Board of Education sustained Proctor's appeal were, among others, that arti-

cle XII, section 4, of the Temple charter, was invalid, which question is a matter of law, essentially judicial in character, and one for the courts alone to determine.

The order of the state superintendent upon appeal to him by Proctor was directed only to the board of trustees of the Temple Independent School District. It did not attempt to control any action of the city commissioners. The control and management of the schools was not in the hands of the city commissioners. In the last analysis, the controversy to be tried at a hearing upon the merits, and the issue as clearly made by the pleadings on the motion to dissolve the injunction, is whether Proctor or Hawkins is entitled to the office of superintendent of the Temple schools. Such a controversy is one properly to be presented to the state superintendent and the State Board of Education before it is presented to the courts. Bear v. Donna Independent School Dist. (Tex.Civ.App.) 74 S.W.(2d) 179 (writ ref.). Proctor followed the proper procedure. His contention was sustained both by the state superintendent and the State Board of Education. "A final order, when made by the State Board of Education, is binding on all interested persons, as fully and completely as a judgment of a court of competent jurisdiction, and such order must be obeyed unless modified or set aside on an appeal to the courts." The same is true of a decision of the state superintendent. 37 Tex.Jur. p. 926, and cases cited. These orders appellee had obtained; and the school board was refusing to comply with them but had brought no suit to set them aside. This condition presented the status quo at the time of the hearing on the motion to dissolve which, we think, appellee was entitled to have maintained until the case could be tried upon its merits. That in effect is all that the order appealed from does. It does not decide who is entitled to the office of superintendent of the Temple schools, but in effect only keeps in force the ruling of the state superintendent and of the State Board of Education until a trial of the controversy on its merits could be had. The injunction does not run against the city commissioners, but does run against the city of Temple, and the board of trustees of the school district. While we see no reason to issue an injunction against the city of Temple, since the management and control of the schools is in the hands of the trustees, the

injunction against the city of Temple as such is harmless, and may be disregarded.

Nor does the fact that the state superintendent predicated his order in part upon a conclusion involving a judicial question render such order void. In the discharge of his duties, on appeals to him from acts of subordinate school officials, the state superintendent is frequently confronted with questions judicial in character. He can call upon the Attorney General for advice in such matters. Administration of the school laws of the state often requires him to pass upon legal questions. His conclusions may or may not be correct. They are not final, but may be reviewed by the courts. But his orders are still prima facie valid until set aside by appropriate appeal therefrom. The fact that parties aggrieved may in certain instances invoke the jurisdiction of the courts in school matters, where strictly judicial questions are involved, without first appealing to the state superintendent, as was true in Chastain v. Mauldin (Tex. Civ.App.) 32 S.W.(2d) 235; Board of School Trustees v. Bullock Common School Dist. (Tex.Civ.App.) 37 S.W.(2d) 829, affirmed by Supreme Court in 55 S.W. (2d) 538, cannot be construed as holding that the decisions of the state superintendent, where appeal is prosecuted to him under the statutes, are void merely because the controversy presented to him may involve a judicial question. His decisions or orders still remain prima facie valid and binding until set aside in a proper proceeding brought for that purpose.

While the question of the validity of Proctor's contract is not before us on this appeal, that being a matter to be determined in a trial upon the merits, in deference to the contentions made in appellants' attack upon the validity of the state superintendent's ruling and one of the grounds on which it was based, we deem it proper to consider the provisions of the city charter under which the city commissioners undertook to rescind the former action of the school board in electing Proctor, and which precipitated this controversy.

Is the provision of the city charter above quoted, giving to the city commissioners power to veto by majority vote any action of the school board "by which any pecuniary liability shall be incurred, or any funds expended or appropriated," a valid provision?

It is manifest we think that if this provision is valid it results in a dual control of the school system of Temple. Anything from the hiring of a janitor to the erection of a school building would, to that extent, incur a pecuniary liability, which under such charter provision would be subject to veto by the governing board of the city, and, as this case demonstrates, might readily lead to confusion inimical to a proper management and operation of the public schools, in which the state has as much interest as the municipality.

It is not shown how the management and control of the Temple schools was exercised prior to the adoption by that city of the home rule amendment (article 11, § 5, Texas Const.) in 1922. Whether by a board of trustees or by the city council is, we think, immaterial. For, if managed and controlled by the city council or city commissioners prior to 1922, when the people by vote adopted the new charter providing for a board of school trustees to have control of its schools, they thereby changed the form of their school government to a board of trustees as effectively as if an election for that purpose had been held under the provisions of article 2774, R.S.1925.

At the time of the adoption by the city of Temple of its charter two methods of control of its schools were authorized: (1) By the city commissioners; (2) by a board of trustees, either appointed by the commissioners or elected by the people. It is now settled, however, that, where such city does assume control of its schools, such control, so far as the schools are concerned, does not become merged into and become a part of the municipal government as such. And where the city commissioners or city council retain control of its public schools it acts in a dual capacity—one as a governing body of the city in its status as a municipality, and the other as the controlling or governing board of its schools. The two capacities are not to be confused. City of Rockdale v. Cureton, 111 Tex. 136, 139, 229 S.W. 852; City of Ft. Worth v. Zane-Cetti (Tex.Com.App.) 278 S.W. 183. In so far as it acts in its strictly municipal governmental capacity, its powers are referable to article 11 of the Constitution and title 28 of the R.S. (article 961 et seq., as

amended [Vernon's Ann.Civ.St. art. 961 et seq.]). Whereas, in the management and control of its schools, its powers are referable to article 7 of the Constitution and title 49 of the R.S. (article 2584 et seq., as amended [Vernon's Ann.Civ.St. art. 2584 et seq.]). The adoption of the home rule amendment by the city of Temple was authorized by and accomplished under section 5, article 11, of the Constitution, which makes no reference to schools, but does make invalid any charter provision violative of the Constitution or of the general laws of the state. Nor is the provision of section 10 of article 11 of the Constitution, authorizing the Legislature to constitute a city or town a separate and independent school district, any limitation upon the power of the Legislature, given in section 3 of article 7 of the Constitution, to pass laws governing the management and control of such school districts. In so far, therefore, as the city charter relating to the control and management of the public schools is concerned, its provisions should be tested by the provisions of the general school laws (title 49, R.S.) in force at the time, rather than by the general laws relating to powers of the city in its strictly governmental capacity as a municipality (title 28, R.S.).

 Appellants insist, however, that the provisions of subdivision 32 of article 1175, R.S.1925, giving to a city adopting the home rule amendment authority "to provide for the establishment of public schools and public school system in any such city, and to have exclusive control over same," etc., with power to levy and collect necessary taxes for their support, vested in the city of Temple full power, under said article, to provide for such control of its schools as it saw fit. This article of the statute, however, is but a general declaration of the governmental powers vested in the city. In fact it adds nothing to the powers of a city, which had assumed control over its schools, not already granted to such city under the general school laws in force at that time. And this provision, of course, must be construed as being subject to the language of the Constitution (article 11, § 5), that "no charter * * * shall contain any provision inconsistent with * * * the general laws * * * of this State." We think the language of subdivision 32 of article 1175, R.S., should be construed in the light of all these provisions, and carries with it the necessary implication that such "exclusive control" means control to the exclusion of the control exercised by the county or state over other types of independent school districts authorized and provided for by the school laws; and does not mean that by such "exclusive control" such districts are not amenable to the general school laws applicable to such districts. To hold otherwise would be to ignore the very limitation in the Constitution itself that the charters of home rule cities must conform with the Constitution and the general laws of the state.

What, then, were the provisions of the general laws of the state relative to such district at the time said charter was adopted?

 In 1905 the Legislature passed a comprehensive act (chapter 124, Acts 1905, pp. 263–311) providing for a complete system of public free schools in Texas. Most of the provisions of this act were carried into the R.S. of 1911, under which the city of Temple adopted its charter. Section 144 of said act provides that: "Schools thus organized [Independent School Districts] and provided for by incorporated cities and towns shall be subject to the general laws, so far as the same are applicable"; etc. Article 2871, R.S. 1911. Chapter 17 of R.S.1911 (articles 2867 to 2883) manifests a clear legislative intent that, where a board of trustees has control of such schools, their control is to be exclusive. Board of School Trustees v. City of Sherman, 91 Tex. 188, 42 S.W. 546. Chapter 17, R.S.1911, makes no provision for the selection, organization, or terms of office of such trustees. Chapter 18, R.S.1911, articles 2884–2895, does, however, specifically cover these matters, and article 2885, R.S.1911, clearly applies as well to cities constituting an independent school district, and authorizes the selection of trustees through appointment by the city council rather than through election by popular vote. And article 2892, R.S.1911, which brought forward in part section 168, Acts 1905, clearly applies, we think, to all trustees of independent districts, whether appointed by the city council or elected by popular vote. This article, in force in 1922, when said charter was adopted, provided that such boards of trustees should adopt rules, regulations, etc.; "and the public free schools of such independent district shall be under their control; and they shall have the exclusive

power to manage and govern said schools, and all rights and titles to property for school purposes heretofore vested in the mayor, city councils or school trustees by articles (3995, 4013 and 4032) Revised Statutes (1895) or other statutes, general and special, except such cities as are exempted by this title, shall be vested in said board of trustees and their successors in office," etc. A reference to the cited articles of the 1895 R.S. clearly shows that it was the intent of the Legislature that said article 2892, R.S.1911, should apply to all types of independent districts, whether in towns and villages, or in incorporated towns and cities, such as Temple.

This was the general law in force at the time the city of Temple adopted its home rule charter, and its validity must be determined under such law. In so far, therefore, as the provisions of section 4, article XII, undertook to give the city commissioners veto power of the acts of the board of trustees in their government and exclusive control of the public schools of the district it contravenes the provision of the Constitution, because it is contrary to the general law of the state in force at the time, and is therefore void. 30 Tex.Jur. § 90, p. 180, and cases there cited.

■ Appellants contend, however, that the effect of subsequent validating acts of the Legislature relating to home rule city charters gives vitality and validity to the provision of the charter here involved. See Acts 1929, c. 149, p. 324 (Vernon's Ann.Civ.St. art. 1174a); and Acts 1925, c. 50, p. 187. This contention cannot be sustained. That which is void because in violation of the Constitution cannot be given life in any such manner. City of Lubbock v. Magnolia Pet. Co. (Tex.Com. App.) 6 S.W.(2d) 80.

Under the conclusions above indicated, we deem it unnecessary to pass upon the question whether, under the facts shown, the city commissioners and the city of Temple were estopped to rescind the action of the school board in employing Proctor, even if the charter gave them that power.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.