### Board of School Trustees v. City of Sherman.

No. 573.—Decided November 8, 1897.

**1. Public Schools—Powers of City Council and Trustees.**

Under the Constitution and laws of the State and the charter of the City of Sherman the board of trustees had the exclusive power to fix the salary of its superintendent of schools, and the city council could not limit such power by an ordinance requiring an allowance of salary above a maximum named to be submitted to the approval of such council. (Pp. 191 to 194.)

**2. Same—General Laws Construed.**

Rev. Stats., 1879, art. 3783, Acts, 1879, p. 76, and Acts, 1883, p. 112, evidence a policy that when a city, however incorporated, assumed control of its public schools the city council should exercise the powers conferred by art. 3783, until a board of trustees should be elected or appointed, in which event such board should thereafter supersede the council in the power of control, management, etc., of the public schools. (Pp. 191, 192.)

**3. Same—Special Charter Construed.**

The city council and school trustees of the City of Sherman, when it was incorporated under the general law, had the powers conferred by art. 3783, Rev. Stats., and

the substantial re-enactment of such article and of the act of 1883, in sections 121 and 122 of the special charter of such city should be subject to the same construction as the general laws from which they were taken. (Pp. 192, 193.)

**4. Same.**

The omission in sec. 122 of said charter of the language of the act of 1883, conferring upon the trustees the power to manage and govern the schools "that the city council * * * now have," was proper in view of the fact that, the city having previously appointed trustees, the council did not then possess such powers, and such omission did not show an intention to vest "exclusive" power in the council and general control in the trustees at the same time. The "exclusive power" vested in the council by art. 3783, Rev. Stats., was exclusive as against State or county officials, and not as against trustees who might succeed to the power of the council. (P. 193.)

**5. Public Schools—Control—Fixing Salaries.**

The word "control," as used in the statutes relating to public schools, includes the fixing of the salary of a superintendent. (P. 193.)

QUESTION CERTIFIED from Court of Civil Appeals for Fifth District, in an appeal from Grayson County.

*Head, Dillard & Muse, Hazelwood & Smith* and *Galloway & Dunlap*, for appellants.—Under the recognized rules of construction of statutes, the charter of the city of Sherman conferred on the trustees when elected, exclusive control and management of such schools and the city council had no authority whatever over the same. Rev. Stats., arts. 4006–4012, inclusive; 4013–4016, inclusive; and 4018–4021, inclusive.

After the city council had elected to place the public schools of the City of Sherman under the control of the trustees, it had no authority to pass an ordinance limiting the power of such trustees in any manner whatever, and especially over the school funds belonging to such schools. Same authorities.

Statutes in pari materia should be so construed as to preserve all their provisions, though apparently in conflict, rather than that one should be held destructive of another. Same authorities; also, Dallam, 402; Selman v. Wolfe, 27 Texas, 72; Austin v. Railway, 45 Texas, 266; Lewis v. Aylott, 45 Texas, 190; Duncan v. Taylor, 63 Texas, 646; 23 Am. and Eng. Encycl. Law, p. 311 and notes, pp. 315 to 319 and notes; Manuel v. Manuel, 13 Ohio St., 464; Talcott v. Harbor Commissioners, 53 California, 199.

Municipal corporations possess and can exercise only such powers as are granted in express words and such as are necessarily implied or incident to the powers expressly granted. Pye v. Peterman, 45 Texas, 312; Dwyer v. City of Brenham, 65 Texas, 526; Vosburg v. McCrary, 77 Texas, 568; 1 Dillon, Mun. Corp. (3d ed.), 115, secs. 89 to 118.

*G. P. Webb* and *Sidney Wilson*, for appellee.—Where a new Act of the Legislature, although not repugnant in all its provisions to a prior one, comprehends the entire subject matter, or where it revises the subject matter of a former one, and is intended as a substitute for it, or where it is framed from another, some parts being omitted, the subsequent

statute must be construed to repeal the prior one.     Tunstal v. Womley, 54 Texas, 480; Bryan v. Sundberg, 5 Texas, 418.

The special Act of the Legislature granting a special charter to the City of Sherman comprehends the entire subject matter of public schools in the City of Sherman and was intended to govern such schools without reference to any other law.     Same authorities, and City of Dallas v. Light Company, 83 Texas, 243.

The conflicts between the provisions of the city charter and the general laws of the State governing the public schools are such that they can not both stand together; therefore the special Act must prevail.

The city council of the City of Sherman never having placed the exclusive control and management of the public schools in the hands of the trustees, had the authority to pass the ordinance limiting the salaries of the superintendent and teachers.     McDonnell v. Railway, 60 Texas, 590; Chancey v. State, 84 Texas, 529.

Articles 4013 to 4016, Rev. Stats., inclusive, while declaring themselves to apply to cities under special charter, do not apply to the City of Sherman.

DENMAN, ASSOCIATE JUSTICE.—The City of Sherman which prior to 1895 had been incorporated under the general law as a city having one thousand inhabitants and over was, at the regular session of the 24th Legistature, 1895, incorporated as a city having ten thousand inhabitants by a special act.     The act though special was by its terms made a public law, and the courts required to take judicial knowledge thereof.     Prior to the time of the granting of the special charter the city had long been a separate independent school district, having control and·management of its own public free schools by a board of trustees under the general law, which had been determined by an election held for that purpose.     After the city was incorporated under said special act the city counsel by an ordinance provided for an election of a board of six trustees, such ordinance containing this further provision, to-wit:     "The salaries of the superintendent, teacher of the high school department and of other teachers in the public free schools shall be fixed by the board of trustees; provided, if the salary of the superintendent shall be fixed in excess of $1500 a year, or the salary of the principal of the high school department shall be fixed in excess of $1000 a year, and the principal of a building, or any other teacher in the high school department shall be fixed in excess of $750, or the salary of any other teacher than those named shall be fixed in excess of $540, then the salary or salaries fixed by the board in excess of the above sums for teachers, shall be subject to the approval of a majority of the whole city council." The board of trustees, having been elected, employed a superintendent of the public free schools of the city and fixed his salary at $1800 a year.     The city council refused to approve this action of the board. Notwithstanding such refusal the board of trustees proceeded to pay such superintendent monthly at the rate of $1800 per year and continued

to so pay him over the protest of the city council until the preliminary writ of injunction was sued out and issued in this case.

After making the above statement the Court of Civil Appeals certifies to this court the following question: "Under the Constitution and laws of this State and the charter of the city of Sherman, did the board of trustees have the exclusive power to fix the salary of the superintendent and to order the payment of the school fund therefor; or did the city council have the power to limit their authority, by requiring that the salary should not be fixed by such board above $1500, without submitting such action to the approval of such city council?"

When any city or town, no matter how incorporated, assumed control of its public free schools, the Rev. Stats. of 1879, art. 3783, which was taken from Acts 1876, p. 209, sec. 55, provided: "The council or board of aldermen of such city or town are invested with exclusive power to maintain, regulate, control and govern all the public free schools now established, or hereafter to be established, within the limits of said city or town; and they are furthermore authorized to pass such ordinances, rules and regulations not inconsistent with the Constitution and laws as may be necessary to establish and maintain free schools, purchase building sites, construct school houses and generally to promote free public education within the limits of their respective cities or towns." By subsequent articles provisions were made for raising funds for school purposes and the custody thereof, and for vesting of the title to school property not necessary to notice here. No provision was up to this time made for trustees. The Act of 1879, p. 76, however provided for the voters of the city to decide by an election whether the schools should be controlled by the council or board of aldermen, or by a board of trustees to be elected, and further provided that if trustees were determined upon the "board of trustees shall have and exercise exclusively the same powers, control, management and government of and over such public free schools and institutions of learning in such cities or towns as are now or hereafter may be by law conferred upon the council or board of aldermen of such cities or towns where such council or board of aldermen are invested with the control of such public free schools." Whether this statute conferred upon the board of trustees when elected all the powers conferred by the statute first above quoted upon the council or board of aldermen, is not necessary to be determined in this case. It clearly did so as to the power of control, management, etc., of the schools. As to these matters it shows a purpose on the part of the Legislature to substitute the trustees for the council or board of aldermen. As the law thus stood it was applicable to all cities no matter how incorporated. The Act of 1883 (Genl. Laws, p. 112) provided that in cities or towns of one thousand inhabitants or more incorporated under the general law the city council might appoint the trustees, and that "the public free schools of such city or town, shall be under the control and supervision of such board of trustees, and said board when appointed shall have the same power to control, manage

and govern said schools that the city council or board of aldermen now have." It will be observed that the language of this act does not in terms provide that the powers conferred upon the trustees thus elected by the council shall be exclusive, but we are of opinion that it was the purpose to make them so and that upon the appointment of the board of trustees the council could no longer exercise any of the powers conferred upon them by the article 3783 above quoted that were conferred by the Act of 1883 upon the council. All these acts evidence a fixed policy that when any city or town no matter how incorporated assumed control of its schools the council or board of aldermen should exercise the powers conferred by said article 3783 unless and until a board of trustees should be elected or appointed as the case might be, in which event such board should thereafter supersede the council or board of aldermen in the exercise of the powers conferred upon such board of trustees.

It appears from the statement of facts above that the City of Sherman prior to the granting of its special charter in 1895 had been incorporated under the general law as a city having "one thousand inhabitants or more," and therefore it was subject to the act of 1883, above referred to, regulating the appointment of its trustees and their powers. Its council therefore at that time had the powers conferred by said article 3783 until its board of trustees were organized, whereupon such board superseded the council in the exercise of the powers conferred upon them by the section of the Act of 1883 above quoted. When the Legislature came to grant the special charter to the city above referred to, in 1895, it thereby constituted it a separate and independent school district, which was merely recognizing and continuing its previous status as such, and provided that "the city council is vested with exclusive power to maintain, regulate, direct and govern all the public free schools now established or hereafter to be established within the limits, and it is furthermore authorized to pass such ordinances, rules and regulations, not inconsistent with the Constitution and laws of this State, as may be necessary to govern the same, establish new schools, purchase building sites, construct school houses, and generally to promote free public education within its limits." This was merely inserting into the charter in substance said article 3783, which we have seen applies to all cities that have assumed control of the public free schools within their respective limits and which would have applied to the City of Sherman if it had been omitted from its special charter. The charter then provides that the city council may provide for the election of trustees, and in reference to their powers when elected, provides:

"Sec. 121. Said board of trustees may adopt such rules, regulations and by-laws for their own government as they may deem proper.

"Sec. 122. The public free schools of said city shall be under the control and supervision of such board of trustees, and said board when elected shall have power to control, manage and govern said schools and order the payment of school funds for school purposes."

It will be observed that the language in section 122 "the public free schools of said city shall be under the control and supervision of such board of trustees" was taken from that portion of the Act of 1883 above quoted.

As shown above, prior to its special charter the City of Sherman was subject to said article 3783, conferring power upon its council, and to said Act of 1883 conferring power upon the board of trustees, and that the effect of such provisions was to vest in the board of trustees, when appointed, the exclusive power of "control and supervision." When the Legislature by granting the special charter transferred the City of Sherman from the class of cities of one thousand inhabitants or more incorporated under the general law, to that class incorporated under special charters, and at the same time inserted into such charter these two provisions from the general law by which said city had recently been governed, it must be presumed that it intended them to receive the same construction in the charter as in the general law. It was eminently proper to omit from said sec. 122 of the charter the words in that portion of the Act of 1883 above quoted "and said board when appointed shall have the same power to control, manage and govern said schools that the city council or board of aldermen now have," because, (1) such words added nothing to what preceded since the declaration that "the public free schools of such city or town, shall be under the control and supervision of such board of trustees," in the very nature of things, was inconsistent with the idea that the "exclusive" power "to control, manage and govern" should remain with the council after the appointment of the trustees; and (2) at the time of granting the charter the council of the city of Sherman had no such authority, but same had passed to the trustees, and therefore the use of such language in the charter would have been inapplicable to the then condition of the city, and misleading.

The construction we have given said provisions avoids the conclusion that the Legislature intended to create the confusion that would result from attempting to vest "exclusive" (not paramount or supervisory) power of control in the council and general control in the board of trustees. It appears to us that the word "exclusive" in said article 3783 was inserted solely for the purpose of conferring upon the council or board of aldermen of any city that assumed control of its public free schools the full powers specified in said article, as against any State or county officials, and that it cannot properly be held to have been directed against the powers of the board of trustees for such city, for such boards were unknown when said article became the law.

The word "control," as used in the various laws relating to public free schools, would clearly include the fixing of the salary of the superintendent, for it is the word used in passing them under the dominion of the cities, and seems to be used in a very comprehensive sense. We are therefore of the opinion that when the board of trustees was organized it became invested, by virtue of said charter provision, with the ex-

clusive power to fix the salary of the superintendent, and we so answer the question certified. We do not wish to be understood, however, as intimating any opinion as to what other powers such board has, or whether the Act of 1889, General Laws 128, has any application thereto.