**CITY OF EL PASO et al. v. CARROLL, City Treasurer.**

No. 3649.

Court of Civil Appeals of Texas. El Paso.

July 15, 1937.

Rehearing Denied Aug. 12, 1937.

J. Walker Morrow, City Atty., Ernest H. Guinn, and Coyne Milstead, Ass't City Attys., and Joseph G. Bennis, all of El Paso, for appellants.

McBroom & Clayton, of El Paso, for appellee.

NEALON, Chief Justice.

Appellants, city of El Paso and independent school district of El Paso, both municipal corporations, appeal from a judgment of the district court of the Forty-First judicial district denying their prayer for mandamus against appellee, Ben Carroll, city treasurer of the city of El Paso.

The case is before us upon an agreed statement of facts and upon findings of fact made by the trial court.

The findings of fact pertinent to the issues are those numbered from 3 to 14, and are as follows:

"3. By an election held on January 4, 1898, the City of El Paso assumed control of its public schools and thus became an Independent School District; and by election duly and legally held on April 15, 1937, section 127 and 134 of the Charter of the City of El Paso, were amended, and a portion of section 127 is as follows:

"'The City Council shall annually levy and collect as requisitioned by the Board of Trustees of the Independent School District of the City of El Paso, or as may be otherwise provided by law, for the fiscal year beginning March 1, 1937, and each fiscal year thereafter, a school tax on all of said property aforesaid, in an amount not to exceed that which has been heretofore or may hereafter be voted by the qualified property tax paying voters of the Independent School District of the City of El Paso, for the support and maintenance of its schools and for the erection and equipment of its school buildings, etc.'

"This amendment to the charter was sufficient to vest control of the Independent School District of the City in the Board of Trustees. * *

"3a. By the election held on January 4, 1898, whereby the City of El Paso assumed control of its public schools, referred to in Findings of Fact No. 3, exclusive control and management of said schools was vested in a Board of Trustees.

"3b. By election duly and legally held February 19th, 1929, Sections 127 and 134 of the Charter of the City of El Paso, were amended so as to read as follows:

"'Section 127: The City Council shall have power by ordinance to annually levy and collect taxes for its fiscal year ending February 28, 1930 and each fiscal year thereafter until February 28, 1934, the amount of $2.25, and thereafter for each fiscal year $2.35 on the One Hundred Dollars assessed value of all property real and personal, in the City, not exempt from taxation by the Constitution and laws of the State for the purpose of defraying its current municipal expenses, to pay debts heretofore contracted, to pay interest on and create sinking funds for its bonded debt, to construct or acquire water works, gas works, canals and public buildings, to improve its streets and to make other permanent improvements, and for the support of its free public schools, provided that One Dollar ($1.00) of the same may be levied, collected and used for the support of its public free schools to pay interest and create sinking funds for the bonded debt created for public schools; provided, that no tax shall ever be levied except * * *'

"3c. By election duly and legally held February 19th, 1929, Section 70J was adopted as an amendment to the Charter of the City of El Paso, which amendment reads as follows:

"'Section 70J: That the City of El Paso shall have and exercise all the powers conferred upon cities by Article 1175 of the Revised Civil Statutes of the State of Texas, 1925, as cumulative of all other powers given said city by said Charter and amendments thereto.'

"3d. The 1936 tax levy is by all parties admitted to be valid.

"4. The City of El Paso owns and operates a water works system and from the operation of such system the City has accumulated earnings in excess of $54,000.00, carried on the books of the City in an account known as the 'Water Works Operating Fund.'

"5. The $54,000.00 aforesaid is not pledged for the payment of any obligation by any express contract or ordinance. The servicing of the one million six hundred thousand dollars of the bonds of the city outstanding, in relation to the water works, is out of the earnings of the water works system. In addition there is carried on the books of the water works, a depreciation fund for replacing and repairing worn out and obsolete equipment, and providing for extensions of the system as necessary from time to time.

"6. That the $54,000.00 here in controversy is carried on the books of the water works as part of its depreciation fund.

"7. On June 21, 1937, the City of El Paso, by warrants and resolutions, directed and delivered to the Respondent, in his capacity as City Treasurer, its order, to transfer from the water works operating fund, said sum of $54,000.00 and deposit the same in the fund created solely for the purpose of receiving said sum, known as 'Trust Fund No. 2,' to be disbursed by warrant as hereinafter mentioned.

"8. On June 21, 1937, the City Council passed an ordinance creating a special fund to be known as 'Trust Fund No. 2.' Section 2 thereof, provides: 'That the said fund is created for the purpose of receiving the sum of $54,000.00 from surplus earnings of the water works department for payment to the Independent School District of the City of El Paso, as an advancement on the uncollected portion of the 1936 tax levy made for school maintenance.' This ordinance contains an emergency clause.

"9. On the 21st day of June, 1937, the City Council passed a resolution authorizing and directing the Mayor of the City, the Superintendent of the Water Works and the Auditor and the Treasurer, to transfer and deliver the sum of $54,000.00 from the Water Works Operating Fund to the City of El Paso Trust Fund No. 2, by proper check or warrant; and further providing that the Mayor of the City of El Paso, the said superintendent, said auditor and said treasurer, be and are authorized and directed to execute and issue to the City of El Paso Trust Fund No. 2 a proper warrant or check against said Water Works Operating Fund, necessary for said transfer and delivery. It was further resolved that the City of El Paso will repay the said sum of $54,000.00 to the Water Works Operating Fund, in installments over a period of twelve months, and that interest will be paid thereon to said Water Works Operating Fund, at the rate of three per cent per annum.

"10. Likewise, on the same day and date, it was provided by resolution of the City Council, that the auditor and treasurer of the City of El Paso be and are authorized and directed to deposit the said check for $54,000.00 drawn against the Water Works Operating Fund, and payable to the City of El Paso Trust Fund No. 2, in said Trust Fund No. 2, and that the Mayor and auditor of the City of El Paso be and they are hereby authorized and directed to issue a warrant on said fund so deposited, in the sum of $54,000.00, payable to the Independent School District of the City of El Paso, for advancement made to said School District on the 1936 tax levy for school maintenance, and the treasurer of the City of El Paso be and he hereby is authorized and directed to issue a check against said fund payable to said School District and to take up said warrant and charge same against said fund.

"11. The warrants provided for in the resolution were drawn; one directing payment out of the Water Works Fund to the order of the City of El Paso Trust Fund No. 2 for $54,000.00, signed by M. A. Harlan, Mayor, G. R. Daniels, City Auditor, and W. R. Collins, City Clerk. The other, signed by the same officials, drawn on Trust Fund No. 2 and payable to the order of the Independent School District of the City of El Paso, Texas.

"12. On the same day, June 21, 1937, the warrant aforesaid, payable to the City of El Paso Trust Fund No. 2 was duly presented to Respondent in his capacity as City Treasurer, and he refused to honor same and comply with the resolution of the City Council, and that same is likewise true as to the warrant aforesaid, payable to the order of the Independent School District of the City of El Paso, Texas; and, unless the City Council, in the proceeding before narrated, exceeded its legal power, the writ of mandamus should issue.

"13. During the year 1923, by election duly held, the City of El Paso was authorized, as a School District, to levy a school tax for the maintenance of the free public schools of the city, in the sum of one dollar on each one hundred dollars of valuation of all taxable property within the city.

"14. For the fiscal year 1936, ending February 28, 1937, the City, acting through its city council, levied a tax for the school maintenance fund, for the support of its free public schools, at the rate of $0.76525, which, on the assessed valuation, and assuming the collection of one hundred per cent of said tax, would create a fund of $589,501.51. Collected thereon has been the sum of $452,135.17, which has been paid over to the Independent School District of the City of El Paso. The balance of approximately $137,000.00 has not been collected by the city. This approximately $137,000 of delinquent taxes, when and if collected, will be collected and come into the custody of the City."

The findings are unchallenged, and we adopt them, excepting only the statement at the conclusion of paragraph 14 to the effect

that the sum of $137,000 taxes due for the year 1936 will be collected and come into the custody of the city. The correctness of this, as a conclusion of law, depends upon the construction to be given to articles 2801 and 2802, R.C.S. 1925.

Predicated upon the foregoing findings of fact, the court concluded:

"1. Unless otherwise provided by charter, ordinance or contract, the funds derived by a city from the operation of a municipally owned Water Works, are part of the general fund of such city.

"2. The City of El Paso, operating in a strictly municipal capacity, that is, acting other than in the control of its public schools, is a municipal corporation. The city, as an Independent School District, is likewise a department of the State Government and is likewise endowed with the attributes of a municipal corporation, and is such. These two municipal corporations are separate and distinct, although the territory in which, and the persons over whom the two function, are identical.

"3. When, by popular vote, the people of a city elect to have the city as an Independent School District operate through a Board of Trustees rather than the Mayor and City Council, the distinctness of the two becomes more marked.

"4. When the voters elect to have the city, as an Independent School District, function through a Board of Trustees, the power and responsibility of the Mayor and City Council as to the schools, cease.

"5. The city, functioning through the Mayor and Council, and other officials, as to revenue to support the schools, becomes the fiscal agent of the city as an Independent School District. The amount of money to be raised for the support and maintenance of the schools is to be determined by the School Board within the limits of the authority conferred by the votes of the property tax paying citizens of the District. The district, of course, is the city. When the Board of School Trustees exercises this discretion, it is the ministerial duty of the city officials to assess, levy, and collect the tax.

"6. The city is without lawful authority to advance to the schools, that is, the Independent School District, money out of its general fund. Especially is this true unless it appear that the general fund is more than sufficient to pay the claims chargeable against such fund. The city, considered as strictly a municipal corporation, has the power to use the general fund only for the purposes and functions delegated by the law to it. The city, as strictly a municipal corporation, and the city as an Independent School District, are as separate and distinct as the City and the County. The reserve built up by the earnings from the Water Works is the property of the city in strictly a municipal capacity. All funds owned by it in this capacity are trust funds held by it for the discharge of the power with which it is entrusted.

"7. The city is without power to create a trust fund from the general fund of the city, unless the general fund is more than sufficient to meet the demands payable by law out of such general fund. Claims payable out of such general fund are the current expenses of the city, other than those payable out of the special fund.

"8. The ordinance of June 21, 1937, purporting to establish Trust Fund No. 2 is insufficient to create Trust Fund, within the meaning of the law. In order to create a trust fund the ordinance must delineate the Trust. This it fails to do, further than to say that the fund is to immediately be paid to the Independent School District. Even though respondent had honored the warrant drawn in favor of Trust Fund No. 2, no change in the character of the $54,000.00 would have been thereby effected. The end sought by the City is clear; that is, to transfer $54,000.00 of its funds standing in the Water Works account to its co-plaintiff. However, though the means to accomplish the end desired were indirect, if the end was within the lawful power of the city as a strictly municipal corporation, the respondent should have honored the warrant. The City Treasurer is the custodian of the city's funds. It is his legal duty to pay same out on warrants legally drawn against same. Otherwise, to keep same safely.

"9. The ordinance and resolution of June 21, 1937, together providing for an advancement by the city of $54,000.00 as against $137,000.00 of delinquent taxes due the schools. If the schools, that is, the Independent District, accepted such advancement it would amount to a pledge or hypothecation of such funds, to the extent of the legal ability of the District to do so. The record is silent as to whether or not there are outstanding warrants payable out of these delinquent taxes. The record is likewise silent as to whether the city, as an Independent School District has other resources with which to pay said proposed

advancement. It is beyond the power of the Independent School District to repay the advancement proposed by future levy of taxes.

"10. The writ of mandamus is an extraordinary remedy, and it is incumbent upon the relators to show, by a preponderance of the evidence, that the action of respondent in refusing to honor the warrants is illegal."

### Opinion.

Appellants urge four assignments of error challenging the trial court's rulings in the following respects: (1) The denial of the writ of mandamus; (2) that the city "in its municipal capacity" was without power to provide for the maintenance and support of its public free schools; (3) that the city lacked power to advance to the independent school district of the city of El Paso money out of its available funds against the uncollected portion of a tax lawfully levied by the city for school purposes; (4) that the city was without power to create a trust fund from available funds of the city unless the general fund was more than sufficient to meet the demands payable by law out of the general fund.

Counsel for appellants and appellee seemed to agree that the city and the school district are separate and distinct municipal corporations; that a reserve built up by the earnings from the waterworks department is the property of the city in its strictly municipal capacity; that public free education is primarily a function of the state; that generally it is a governmental activity as distinguished from the municipal activities of a city.

The first consideration that presses when an attempt is made to solve the problem here presented is the unchallenged conclusion of the trial judge that it was incumbent upon the relators to show by a preponderance of the evidence that the action of respondent, city treasurer, in refusing to honor the warrant is illegal. This calls for a consideration both of the duties of a city treasurer with respect to funds in his possession and of the burden that must be carried by one seeking the extraordinary legal remedy of mandamus in order to compel the treasurer to honor a warrant.

The burden imposed upon the plaintiff in this character of proceeding is well stated in Watkins v. Huff (Tex.Civ.App.) 63 S.W. 922, at page 924: "The plaintiff in a mandamus proceeding in this state is required to anticipate and answer every possible objection or argument in fact which it may be expected will be urged against the claim. The object of this strictness in pleading is that the court shall be fully satisfied of the propriety of the exercise of this extraordinary remedy, in requiring an officer to do that which, notwithstanding his official obligation, he has refused to do. Houston Tap & B. Railway Co. v. Randolph, 24 Tex. [317] 333. In Bledsoe v. Railroad Co., 40 Tex. [537] 564, it was held that, to entitle a party to this remedy, he must show a clear legal right in himself, and a corresponding obligation on the part of the officer; for, if the right or the obligation be doubtful, the court will not interfere by this process. See, also, Texas Mexican Railway Co. v. Locke, 63 Tex. [623] 629; Arberry v. Beavers, 6 Tex. 457, 55 Am.Dec. 791. These cases have been cited with approval in De Poyster v. Baker, 89 Tex. [155] 159, 34 S.W. 106; Bank v. March (Tex.Civ.App.) 51 S.W. [266] 267."

The controlling issue in this case is as to the power of the city council of El Paso, acting for the city in its purely corporate capacity, to transfer money from its general funds to the independent school district, whether by way of advancement or gift. The record does not make it clear which method is to be pursued, though by the pleadings it is alleged that the transfer is to be a mere advancement chargeable against the uncollected portion of 1936 school taxes. It does not appear, however, either from the pleadings or from the stipulations of fact, that the school board has agreed to transfer any portion of these taxes to the city in repayment of these advances. Indeed, the stipulation between the parties is to the effect that no arrangement for repayment has been made. In this state of the case, may the city treasurer be required to honor the warrant? His position and duties with respect to the city funds are analogous to those of the state treasurer with reference to State moneys. In Houston Tap & B. Railway Co. v. Randolph, 24 Tex. 317, at page 338, will be found a statement of the latter officer's duty with respect to warrants presented. The court, among other things, said (page 338): "The act which it is sought to force the treasurer of the State to perform, in this case, is said to be purely ministerial. If it be meant by that term, that the act is required of him by law, individually, and not officially, the proposition cannot be acceded to. The act is not only official, but it requires the exer-

cise of his judgment, as an officer. * * * He should see that the warrant was 'authorized by law.'"

In briefs and in oral argument it was urged by appellants that the Legislature by granting in the city charter and subdivision 32 of article 1175 the power to provide for the establishment of public schools and to levy and collect the necessary taxes, general and special, for their support and by articles 823, 1027, and 1028 of the Revised Civil Statutes, definitely classified the support of the schools as a municipal function, while not destroying the power of the trustees of the independent school district to manage and control the schools and require that a tax be levied for their support. It is urged that in addition to the tax raised at the behest of the school board, the city may appropriate to the use of the schools the whole or any part of the general funds of the city; and that the support of the schools, being in the case of the city of El Paso a municipal function, it is lawful to divert to their support the earnings of the water works funds to the extent that the city has not exercised the power granted in subdivision 11 of article 1175, R.C.S., "To provide that all receipts from the water works may, in its [City Council's] discretion, constitute a separate or sacred fund which shall be used for no other purpose than the extension, improvement, operation, maintenance, repair and betterment of said water works system or water works supply, and to provide for the pledging of any such receipts and revenues for the purpose of making any of such improvements, and the payment of the principal and providing an interest and sinking fund for any bonds issued therefor under such regulations as may be provided by the charter adopted by such city."

We will first examine the charter as it read June 21, 1937, when the city council passed the ordinances under review. Whatever may have been the rule prior to April, 1937, when the charter was amended, it cannot now be said that the city may assess any tax for the maintenance and support of the schools except upon the requisition of the board of trustees of the school district as provided by the general laws. Sections 127 and 134, as amended, specify exactly the rate to be levied for municipal purposes and that to be levied for school purposes. The provisions are separate and distinct. The terminology is definite. In City of El Paso v. Ruckman, 92 Tex. 86, 46 S.W. 25, 26, the Supreme Court of Texas held that, "by a charter granted the city in 1889, the legislature recognized El Paso as a school district, by providing that it might levy a certain tax to maintain its public schools." The provision in the city charter of 1889 granted power to levy and collect "taxes not exceeding ½ of 1 per cent of the assessed value of such property to maintain the public free schools." The Supreme Court, as stated, held this to be a recognition of the status of the city as an independent school district, its status having been attacked on account of alleged irregularities in the election. The effect of the holding was not that the power granted constituted the schools a "municipal" activity, but that it evidenced that the city of El Paso was also an independent school district.

The reason for the adoption of the amendments in 1937 was apparently to settle all controversy as to the exclusiveness of the control of the schools by the school board and to permit an increased tax rate for school purposes. This is indicated by the pleadings in this case and the argument of counsel. The effect of the amendments was to increase the possible levy and to put the matter of the rate (within legal limits) in the hands of the school board exclusively. The voters made it plain that the city council was to have nothing to say as to amount to be levied. The only other possible sources of power are subdivision 32 of article 1175 of the Revised Civil Statutes and articles 823, 1027, and 1028, in which the grants are in substantially the same language. Article 1175 enumerates certain powers which, in addition to all others, shall be possessed by home rule cities. Subdivision 32 thereof reads as follows: "To provide for the establishment of public schools and public school system in any such city, and to have exclusive control over same and to provide such regulations and rules governing the management of same as may be deemed advisable; to levy and collect the necessary taxes, general or special, for the support of such public schools and public school system." There is nothing in this paragraph that indicates that the taxpayers shall be subject to a double local tax for the maintenance of schools—one to be exacted upon the requisition of the school board and the other in the judgment of the city council. It gives merely the power to levy and collect the taxes, and thereby constitutes the city an agent of the school board for the rendition of said services. This is clear

from a reading of the constitutional provisions applicable to the free public schools and the decisions of the Supreme Court construing them.

The Supreme Court, in the City of Ft. Worth v. W. H. Davis et al., 57 Tex. 225, expressly held that towns and cities have no power to levy taxes for school purposes other than as expressly authorized by the Constitution, and that, save under an express grant of power in the Constitution, the Legislature cannot confer upon city authorities power to levy taxes for school purposes. It was therein argued that section 1, article 7, impliedly gives the power to the Legislature to direct the levy of such taxes as may be necessary in each school district to support an efficient system of free schools. The court, after stating the contention, said: "But in our opinion the constitution, pervaded throughout as it is by a manifest purpose of limiting the taxing power of the legislature and of all the municipal or political subdivisions of the state, has clearly expressed that purpose in reference to taxation for public schools, leaving no room for any such implied authority as is claimed. In the article on education and public schools, the first section of which has just been cited, it directs 'not more than one-fourth of the general revenue of the state, and a poll tax of one dollar,' to be set apart annually for the benefit of the public free schools. It defines the permanent available school funds thus: 'The principal of all bonds and other funds, and the principal arising from the sale of the lands hereinbefore set apart to said school fund, shall be the permanent school fund; and all the interest derivable therefrom, and the taxes herein authorized and levied, shall be the available school fund, which shall be applied annually to the support of the public free schools.' Clearly the expression, 'taxes herein authorized,' negatives any other taxation for school purposes than that expressly authorized in the constitution."

■ It was undoubtedly the intention of the Legislature to conform to the provisions of the Constitution, and it is presumed that the legislation was written with knowledge of what the courts had held to be the Legislature's power.

Down to the present time the Supreme Court has adhered to the doctrines enunciated in this case. In City of Rockdale v. Cureton, 111 Tex. 136, 229 S.W. 852, 853,

the Supreme Court, speaking through Chief Justice Phillips, after calling attention to section 10 of article 11 of the Constitution empowering the Legislature to constitute any town or city an independent school district, and stating that the Legislature had the power to say, as it had done in article 2871 (1911, Rev.Civ.Stat.), that a city or town taking over control of its public schools shall constitute such a district, emphasized the dual character thus conferred, and said, in speaking of certain city school bonds issued for the purpose of erecting and equipping public school buildings and purchasing sites therefor:

"The City of Rockdale had lawfully acquired this dual character. It had its powers as strictly a municipality, to be exercised for strictly municipal purposes; and it had its powers as a duly constituted independent school district. The two are not to be confused.

"It is plain that these bonds were voted and are proposed to be issued as the bonds of the city as a school district. Their validity is accordingly to be tested by the powers possessed by the city in that capacity.

"Taxation for the management and control of the public schools of school districts is governed by Section 3 of Article 7 of the Constitution. The section provides for legislative authorization of additional taxation by popular vote for maintenance and for the erection and equipment of school buildings—which includes the power to purchase sites (Glass v. Pool, 106 Tex. 266, 166 S.W. 375), with a limitation as to the amount of such tax."

■ These decisions seem to us to be conclusive of the lack of power in the city council to aid in financing the support and maintenance of the schools except as authorized by the requisition of the board of trustees. No tax may be levied that exceeds in rate that permitted by a prior majority vote of the property taxpayers in a properly called election.

City of Rockdale v. Cureton, supra, was followed in City of Ft. Worth v. Zane-Cetti (Tex.Com.App.) 278 S.W. 183, 184, in which stress was laid upon the proposition that the city and the independent school district were separate corporations, and while they were provided for in the same statute and have some officers in common, " 'the two are not to be confused'; each remains subject to distinctive limita-

tions of power, although they are jointly affected by other regulations."

In City of Belton v. Harris Trust & Savings Bank (Tex.Civ.App.) 273 S.W. 914, 918, affirmed (Tex.Com.App.) 283 S.W 164, the Austin Court of .Civil Appeals held that a charter provision authorizing an annual levy of $1.50 on the $100 valuation without stating its purpose, had reference to taxation for general municipal purposes under the home rule amendment, and had no .relation whatever to the city's taxing power as an independent school district, "except in so far as its taxing powers to pay its school bonded indebtedness may be construed to be embraced within the 'interest and sinking fund.'" See, also, Treaccar v. City of Galveston (Tex.Civ.App.) 28 S.W.(2d) 887.

It was contended in Temple Independent School District v. Proctor (Tex.Civ.App.) 97 S.W.(2d) 1047, 1054 (writ refused), that subdivision 32 of article 1175 gave the city of Temple full power to provide for such control of its schools as it saw fit. The court held that said subdivision added "nothing to the powers of a city, which had assumed control over its schools, not already granted to such city under the general school laws in force at that time." It further held that that provision must be construed as being subject to article 11, section 5, of the Constitution, which provided that no charter shall contain any provision inconsistent with the general laws of this state. The court added: "We think the language of subdivision 32 of article 1175, R. S., should be construed in the light of all these provisions, and carries with it the necessary implication that such 'exclusive control' means control to the exclusion of the control exercised by the county or state over other types of independent school districts authorized and provided for by the school laws; and does not mean that by such 'exclusive control' such districts are not amenable to the general school laws applicable to such districts. To hold otherwise would be to ignore the very limitation in the Constitution itself that the charters of home rule cities must conform with the Constitution and the general laws of the state."

Board of School Trustees v. City of Sherman, 91 Tex. 188, 42 S.W. 546, was cited as holding that chapter 17 of R.S. 1911 (articles 2867 to 2883) manifested a clear legislative intent that where a board of trustees has control of such schools, their control is to be exclusive. The case had reference to an attempt upon the part of the board of city commissioners to rescind the action of the school board in electing a superintendent, and after passing a resolution declaring the office of superintendent vacant, electing a person other than the choice of the trustees to that office. However, though the facts differ, the principle there enunciated is controlling. If, in the control of the schools, the authority of the board is exclusive, only the board has the power to declare the rate of tax to be levied for the support of the schools, and that rate must be limited to the maximum authorized by law. This being true, the city council of El Paso has no power to grant to the independent school district any part of its general funds. The profits of the water system, to the extent not set apart for the purposes designated in article 1175, subd. 11, R.C.S. 1925, constitute a portion of the City's general fund.

We have read with care and interest the numerous authorities presented and analyzed by counsel for appellants, but find nothing in them that militates against the views herein expressed. On the other hand, we find that the Supreme Court restates as often as the situation demands the "accepted rule of construction that, where a power is expressly given by the Constitution, and the mode of its exercise is prescribed, such mode is exclusive of all others." Crabb et al. v. Celeste Independent School Dist., 105 Tex. 194, 146 S.W. 528, 529, 39 L.R.A.(N.S.) 601, Ann. Cas.1915B, 1146; Parks et al. v. West, 102 Tex. 11, 111 S.W. 726. The mode of the exercise of the power of local taxation for the support and maintenance of the free public schools of independent districts, of the character here involved, is prescribed in the Constitution, and it does not include the mode contended for by appellants. No other grant of power to the municipality to contribute to the support and maintenance of the schools appears in the law.

It does not appear from the record that the $54,000 item was included in the budget which under article 689a-15, Vernon's Ann. Civ.St., the city council is required to file with the city clerk after approval by the city council or in any amendment of said budget. This article provides that no expenditure of the funds of a city may be made except in strict compliance with such an adopted budget, "except that in case of grave public necessity, emergency expendi-

tures to meet unusual and unforeseen conditions, which could not by reasonable diligent thought and attention have been included in the original budget" may be authorized from time to time as amendments to the original budget. If this transfer of funds was intended to be a contribution to the support and maintenance of the schools, and were otherwise valid, the treasurer could not be compelled to honor the warrant intended to effect the transfer unless the budget law were complied with.

It is conceded that if the $54,000 is returned out of the 1936 taxes when collected, nothing will be added to the resources of the school system. The only advantage secured will be the earlier availability of the money. The transaction, though termed an "advancement" by appellants' pleadings, is a loan. When the school taxes are collected by the city tax collector, he receives them for the school district, and is charged with the duty of paying over the collections monthly to the treasurer of the school board (R.S. arts. 2801, 2802). The board of trustees is an agency of the state. The duty of collecting the school tax is imposed by statute. To that extent the collector is the agent of the state, and the city, as a municipal corporation, has no control over these funds. City of Ft. Worth v. Board of Trustees, etc. (Tex.Civ.App.) 224 S.W. 294. They do not come into the possession of the city unless the board so directs. The city has been granted no power to lend money.

It being unnecessary to decide if the school board has power to levy a tax payable in the future to repay the contemplated advance, we refrain from passing upon that question. The petition does not allege that such a tax is contemplated. The stipulation as to facts refutes such an idea. Neither is it alleged that said advance or loan was to be made at the request of the board of trustees of the school district.

Except as they may be modified by expressions herein, the conclusions of the trial court are adopted by this court; and, in conformity with the views herein expressed, the assignments of error are overruled and the judgment of the trial court is affirmed.

HIGGINS, J., did not participate in the decision of this case.