## SAN ANTONIO INDEPENDENT SCHOOL DIST. v. BOARD OF TRUSTEES OF THE SAN ANTONIO ELECTRIC & GAS SYSTEM, et al.

### No. 4500.

Court of Civil Appeals of Texas. El Paso. April 3, 1947.

Rehearing Denied April 24, 1947.

Davis, Hall, Clemens & Knight and A. V. Knight, all of San Antonio, for appellant.

T. D. Cobbs, Jr., and W. L. Matthews and Truehart, McMillan & Russell, all of San Antonio (Brewer, Matthews, Nowlin & Macfarlane, of San Antonio, and Perry M. Chadwick, of Chicago, Ill., of counsel), for appellees.

PRICE, Chief Justice.

This is an appeal by San Antonio Independent School District from the judgment of the District Court of Bexar County, 57th Judicial District. Appellant sued the City of San Antonio, the Board of Trustees of San Antonio Electric & Gas System, and Harold Eckhart and Harris Trust & Savings Bank, Trustees for the bondholders under a trust indenture. Sought was a judgment in a large sum. Alternatively, a declaratory judgment establishing the rights to a large sum of money arising from the operation on behalf of the city of San Antonio of a certain Electric and Gas System owned by the said city but operated for same by a Board of Trustees. The cause of action asserted was alleged to have arisen by virtue of certain provisions in an indenture by which title was con-

veyed for the benefit of the city to a certain Gas and Electric System, and which, subject to certain priorities, provided there should be paid out of the funds arising from the operation of said utilities to said appellant, San Antonio Independent School District, the sum of $113,750 per annum for a period of 30 years. This indenture likewise secured the payment of $33,950,000 of revenue bonds issued by the city of San Antonio to finance the purchase of the gas and electric systems.

The trial was to the court; judgment that plaintiff take nothing and denying the declaratory judgment as sought by plaintiff. For convenience the plaintiff below will be hereinafter referred to as District, defendant City of San Antonio as the City, defendant Board of Trustees of San Antonio Electric & Gas System as Board, and the trustees for the bondholders Harold Eckhart and Harris Trust & Savings Bank, as Trustees.

The facts in this case are undisputed. There is in reality but one question presented, and that is, did the court in rendering judgment for defendants, correctly apply the law to the undisputed facts.

It is deemed necessary to state the facts in some detail. This controversy arose out of the purchase by the city from the San Antonio Public Service Company, a private corporation, of the light and power plant system, and a gas distribution system. The purchase price was $33,950,000. The city financed the purchase by the issuance of revenue bonds in the sum of the purchase price.

The city and district were at all relevant times separate and distinct municipal corporations. The district is an independent school district and has been such for over 30 years. When the transaction took place giving rise to the litigation, the territories of the two municipal corporations were coincidental. There has been some slight change in the boundaries thereafter, but this fact is not deemed material to the disposition of this appeal.

When the city became interested in the acquisition of the property of the San Antonio Public Service Company it was without funds to pay for the legal and engineer-

ing services incidental to intelligent negotiation for the purchase of said systems. On June 15, 1942, the city entered into a contract with certain investment bankers whereby the bankers agreed to furnish legal, engineering and negotiating services and to bid on the bonds it was contemplated should be issued by the city to finance the purchase. These investment banks will be hereinafter referred to as Bankers. In this financing contract it was provided that an appropriate part of the revenue arising from the operation of the utilities by the city should be utilized as reimbursement for such losses as may be suffered by the city and the city schools by reason of transferring the properties from private to municipal ownership.

On July 10, 1942, as required by the bond and warrant law, the city by ordinance gave notice of its intention to acquire the aforesaid utilities, financing same by the issuance of revenue bonds. No election was demanded as to whether or not these bonds be issued. On July 25, 1942, the city enacted an ordinance for the issuance of revenue bonds and containing a trust indenture, one of the provisions of which was as follows: "Section 5. From the next available money in the Revenue Fund after all payments contemplated by Sections 3 and 4 of this article have been made, there shall be paid to the bank which is at the time acting as depositary of general city funds, to be used for general city purposes as may from time to time be approved by the Commissioners of the City of San Antonio, the annual sum of $210,300, and there shall also be paid to the treasurer of the Independent School District of the City of San Antonio, subject to approval as to allocation by the Commissioners of the City of San Antonio, the annual sum of $113,750, both sums to be paid as reimbursement to the City of San Antonio and Independent School District for the loss of taxes which would have been imposed on the properties of the system had the system remained under private ownership. To the extent that such remaining revenues are sufficient such payments shall be made in equal monthly installments. The obligation to pay such annual sums to the city and to the Independent School District shall be cumulative and if in any year the money in the Revenue Fund after making the payments required by Sections 3 and 4 of this article shall be insufficient to pay in full the sums so due for such year, so much thereof as possible shall be so paid and the deficiency shall be paid from the first revenues available in the succeeding year or years after the payments required by Sections 3 and 4 of this article shall have been made in such year or years."

On August 24, 1942, the bonds were purchased by the investment bankers aforesaid for $33,950,000 and a premium of $3,157. It was stated in the consummation of the purchase that same was in accordance with and subject to the terms of "our agreement entered into with the city of San Antonio under date of June 15, 1942."

On October 9, 1942, a trust indenture, the exact or substantial provision the same as the indenture set forth in the aforesaid ordinance of July 25, 1942, was executed by the officials of the city, and on October 13, 1942, by the trustees for the bondholders. On October 23, 1942, the city by ordinance duly passed, confirmed, ratified and approved the transaction and directed delivery of the bonds. The entire transaction was closed on October 24, 1942.

The City and the board, on the advice of the City Attorney have refused to make the annual payments to the district provided for in the aforesaid indenture. The opinion of the city attorney was in substance that the payments provided for amounted to a gift by the city to the district, and hence was illegal.

Several times litigation growing out of the acquisition of these utilities by the city has been before the courts. Guadalupe-Blanco River Authority v. Tuttle et al., Tex. Civ.App., 171 S.W.2d 520; Id., 141 Tex. 523, 174 S.W.2d 589; City of San Antonio v. Guadalupe-Blanco River Authority, Tex, Civ.App., 191 S.W.2d 118 (reversed); See Tex.Sup., 200 S.W.2d 989. None of these cases except the last cited are deemed to have material bearing here. The case reported in the Texas Court Reporter may to an extent by analogy tend to support one of the contentions of appellants here.

When the city acquired this property it was no longer taxable by the dis-

trict. Section 9, art. 11, Constitution of the State of Texas, Vernon's Ann St.; Sec. 2, art. 8, Constitution; art. 7150, R.S. 1925, Vernon's Ann.Civ.St. art. 7150. San Antonio Independent District v. Water Works Board of Trustees, Tex.Civ.App., 120 S.W.2d 861 (W.Ref.); A&M Consolidated Independent School Dist. v. City of Bryan, 148 Tex. 348, 184 S.W.2d 914.

It is thought to be elementary that money coming into the treasury of the city from the operations of utilities is public money. City of El Paso v. Carroll, Tex. Civ.App., 108 S.W.2d 251, (Wr.Ref.) A&M Consolidated Independent School Dist. v. City of Bryan, supra. By the same token, money to come into the city treasury from such source is likewise public money—in short, it is thought money to be realized has the same status as money in the treasury.

█ A city cannot donate its funds to an independent municipal corporation such as an independent school district. Sections 51 and 52, art. 3, Constitution of the State of Texas; City of El Paso v. Carroll, Tex.Civ. App., 108 S.W.2d 251, (Wr.Ref.)

█ If considering the transactions as a whole a gift is sought to be made by the city to the district, the case is ruled by the City of El Paso v. Carroll, supra. There can be no difference between the money raised from the operation of a waterworks by a city and that earned by the operation of a gas and electric plant. Each operation, although conducted for the city by a board of trustees, is in a proprietary capacity.

█ Fundamental then to a correct disposition of this appeal is the determination of whether or not the constating instruments of these transactions created a legal duty on the part of the city owing to the district, or was a mere assent by the other parties to the transaction that the city might so dispose of its funds. If the provision for the payment of $113,750 per annum for 30 years was a part of the consideration for the conveyance of the utilities to the city, or a consideration for obtaining the money to purchase same a duty was created. Guadalupe-Blanco River Au-

thority, et al, v. City of San Antonio, Tex. Sup., 200 S.W.2d 989. There it was held that as a condition to acquiring this property the city of San Antonio agreed to give a lease to the Guadalupe-Blanco River Authority. This was held to create a legal duty.

In the preliminary financing contract of June 15, 1942, whereby the bankers bound themselves to furnish engineering services, legal services and to submit a bid for the purchase of the par $3\frac{1}{2}\%$ revenue bonds to be issued for the purchase of the gas and electric properties for a fee of $1\frac{1}{2}\%$ of the face of the bonds, it was recited:

"It is contemplated by the City and the bankers that in working out the details of the proposed acquisition and financing:

"(a) Subject to the terms and provisions of the trust indenture, the operating revenues remaining after the payment of operation and maintenance expenses and the payments into the bond interest and sinking funds and depreciation fund for which provision will be made in the indenture, shall be disposed of solely in such manner as shall be specified by the City, and such part thereof as is appropriate may be utilized by the City as reimbursement for such losses as may be suffered by the City and the City Schools by reason of transfer of the properties from private to municipal ownership."

This provision does not speak in mandatory terms, but merely seems to confer a privilege. Section 5 of the trust indenture contained in the ordinance of July 25, 1942 has heretofore been copied herein. This language is mandatory, and sounds in terms of duty. This provision, however, appears in the same indenture: "All covenants, conditions and provisions hereof shall be held to be for the sole and exclusive benefit of the parties hereto and their successors and assigns, and of the holders from time to time of said bonds and coupons." The district was not a party to this indenture. This language seems to negative an intent that the district was to be a third party beneficiary.

The provision for the payment of $113,-750, per annum to the district could not be

for the benefit of the bondholders, it would not render their bonds more secure. It could not benefit the city.

It is true that but for the provision in regard to payments to the district the voters of the city might have demanded an election to determine whether or not these bonds be issued. This is not thought to be a lawful consideration to support the provision of the Indenture in question. The bankers received a fee for their services in the sum of 1½% of the face of the bonds; the bondholders the interest on the bonds. In the light of the language used in the instruments involved, the circumstances surrounding the parties and the character of parties involved, we are convinced that the intention was not to create a duty on the part of the city to pay, but to waive any objection that the bankers or bondholders might have to the city making the payments. The city sought to impose an obligation upon itself to make the payments.

There was perhaps an element of apparent fairness in the proposition that the district be compensated for the loss of its patrimony when the utilities became public property. It had no legal right, however, to be compensated by the city for this loss. In our opinion the city had not the legal right to attempt to compensate it for the loss. For a right to compensation it must look to the contract alone. This contract in the respects here involved was one that the city was inhibited from making by the Constitution.

The city cannot do indirectly what it was forbidden by the Constitution to do directly. If the city of El Paso could not give the funds derived from the operation of its waterworks to the El Paso Independent School District, then it is logical that the city of San Antonio cannot validly give funds derived from the operation of its municipally owned gas and electric systems to the district. It can make no difference in principle that the city elected to have the utilities operated by a board of trustees. This is but an agency by which the city may have the utilities operated; thus operating, they are operated by the city. The City by attempting, if it did so, to create a duty to a third party cannot thus evade the prohibition of the Constitution. In the case of City of El Paso v. Carroll, supra, the municipally owned waterworks were operated by a board of trustees. It is deemed useless to labor the matter further. That case governs here. The Supreme Court denied a writ of error. For additional precedents supporting the disposition here made we refer to the authorities cited in said case.

There being no error, it is ordered that the judgment be in all things affirmed.