

# The Attorney General of Texas

May 23, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4524 Alberta Ave., Suite 16
El Paso, TX. 79905
915 533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806 747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Susan Gurley McBee
Chairman
House Committee on Elections
House of Representatives
Austin, Texas 78769

Opinion No. MW-181

Re: Whether persons who voted in the Democratic or Republican primaries may sign a petition for an independent candidate for president.

Dear Ms. McBee:

You have asked whether persons who voted in the Democratic or Republican general primary elections, held on May 3, 1980, may sign a petition for an independent candidate for president to appear on the general election ballot. Article 11.0lb of the Election Code establishes a procedure whereby independent candidates for president may appear on that ballot. A person seeking to become an independent candidate for president must file with the Secretary of State an application which includes a petition signed by a certain number of qualified voters. Election Code article 11.0lb establishes in subdivision 3 the following requirements for persons signing the petition:

> A petition may not be circulated for signatures until after the date of the general primary election in that election year, and any signature obtained on or before that date is void. <u>A voter who voted in the general primary of any political party that held a presidential primary that year is ineligible to sign the petition of an independent candidate for president.</u> The following statement shall appear at the head of each page of a petition: "I certify that I did not vote this year in the general primary election of any political party that held a presidential primary." (Emphasis added).

The answer to your question depends on whether persons who voted in the Democratic and Republican primaries this year are disqualified by the underlined language of article 11.0lb of the Election Code from signing petitions for independents. There is no dispute as to whether the two political parties held general primary elections this year. They are required to do so by statute. See Election Code, arts. 13.02, 13.03.

We must next inquire into the proper construction of the language "presidential primary" as it appears in article 11.01b of the Election Code and determine whether each party held a presidential primary as that term is used in the statute. The Republican Party held a presidential preference primary at which the voters expressed their preferences as to the nominee for president. Rules of the Republican Party of Texas, Rule No. 38a. The vote in the primary determines the entitlement of each candidate to delegates to the national nominating convention, Id. However, delegates to the national convention will be elected at the party's state convention. Rules of the Republican Party of Texas, Rule 38a; Elec. Code, art. 13.58. The Democratic Party held a non-binding presidential preference referendum as part of its general primary. Voters at the primary could express their preferences as to the nominee for president, but delegates to the national convention may or may not be chosen in accordance with those preferences. See Rules of the Democratic Party of Texas, art. V.B. 3(a). The process of electing delegates began at the precinct convention, in which only persons who voted in the Democratic Primary could participate. Rules of the Democratic Party of Texas, art. 1 V.A., B., Texas Delegate Selection Plan for 1980, III A. See Cousins v. Wigoda, 419 U.S. 477 (1975) for authority to hold presidential primary by party rule.

The Election Code does not define the term presidential primary. Cf Acts 1975, 64th Leg., ch. 261 at 630 (temporary law requiring political parties to hold presidential primary elections in 1976). Although other interpretations have relied on expired statutes and defeated bills to determine the definition of presidential primary, we do not believe these offer any assistance in determining legislative intent. The expired bill presents a detailed, complex definition of presidential primary which is inapplicable to either the recent Democratic or Republican primaries. The defeated bills present no reliable indication of legislative intent. Article 13.01 of the Election Code defines "primary election" as used in chapter 13 of the Code:

> The term "primary election," as used in this chapter [arts. 13.01-13.59], means an election held by the members of an organized political party for the purpose of nominating the candidates of such party to be voted for at a general or special election, or to nominate the county executive officers of a party.

This definition does not technically apply to a presidential primary, because candidates for president and vice president are not nominated at a primary, but at national conventions of the political parties. Moreover, this definition is expressly made applicable only to chapter 13, not chapter 11 of the Election Code. Thus, we do not believe the article 13.02 of the Election Code definition of primary election is helpful in determining the meaning of "presidential primary" as the term is used in article 11.01b of the Election Code.

Since the term presidential primary is not defined by the legislature, it is to be construed according to common usage. Code Construction Act, V.T.C.S. art. 5429b-2, §2.01. In interpreting this language we may also consider the object sought to be

attained, the circumstances under which the statute was enacted, the legislative history, common law or former statutory provisions and administrative constructions of the statute. Id., $3.03. The common usage is a particularly appropriate standard here, since the statute requires any person signing a petition to certify that he did not vote in the primary election of a party which held a presidential primary. We do not believe the Legislature intended to require the voters who must sign this certification to make a technical determination of the meaning of presidential primary.

We believe the term presidential primary is commonly understood to include the elections held by both the Texas Democratic and Republican Parties on May 3, 1980. An article in Congressional Quarterly categorized presidential primaries of thirty-five states according to their binding or non-binding nature. "Attention shifts to First Presidential Primaries," 38 Congressional Quarterly 281 (1980). One of the five types of presidential primary was the "[n]on-binding (or advisory) preference vote with delegates selected outside the primary." Id. at 285. A later article in the same journal refers to the Democratic contest in Texas as a non-binding primary. R. Cook, "Carter, Reagan Are Strong Favorites in Texas," 38 Congressional Quarterly 1012 (1980). See also 26 U.S.C.A. $9032(a) (presidential primary election defined to include election of delegates to a national nominating convention or an election for expression of a preference for a candidate). It is almost inconceivable that the common understanding of the term presidential primary would depend on whether the vote determined the allocation of delegates to be selected at a convention or merely expressed the party's preference for a nominee.

By reading presidential primary according to the common understanding of that term, we give article 11.01b of the Election Code a construction that is consistent with the standards approved by the Supreme Court for such statutes. Prior to the enactment of article 11.01b of the Election Code, Texas provided no means of access to the ballot for independent candidates for president and vice president. A predecessor of article 13.50 of the Election Code did provide a means of access to the ballot for independents seeking other offices. Acts 1963, 58th Leg., ch. 424, $104 at 1097. This provision was challenged in American Party of Texas v. White, 415 U.S. 767 (1974). Independent candidates had to submit an application signed by qualified voters who had not voted at either the general primary or the runoff primary of any party which had nominated at either primary a candidate for the office sought. The Supreme Court found this requirement constitutional. 415 U.S. at 789-90. In another case decided one day earlier, the Supreme Court stated at greater length its views with respect to ballot access by independent candidates:

> [T]he State is free to assure itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support.

Storer v. Brown, 415 U.S. 724, 746 (1974).

American Party of Texas v. White, supra, also concerned the requirements for small parties to get on the ballot. It concluded that "the State may determine that it

is essential to the integrity of the nominating process to confine voters to supporting one party and its candidates in the course of the same nominating process." 415 U.S. at 786.

Although the Texas statutes on ballot access by independents were held constitutional as applied to candidates for state office, they were deficient in that they provided no means for independent candidates for president and vice president to get on the ballot. Eugene McCarthy successfully challenged these provisions in 1976. McCarthy v. Briscoe, 418F. Supp. 816 (W. D. Tex., 1976), aff'd 553 F. 2d 1005 (5th Cir. 1977). The legislature responded to the decision in the McCarthy case by enacting Senate Bill 1150 to provide a procedure for independent candidates for president and vice president to get on the ballot. See Bill Analysis for Senate Bill 1150 prepared for Senate Committee on Elections, filed in Legislative Reference Library.

Article 11.01b of the Election Code  was thus enacted in response to the McCarthy decision and with knowledge of the Supreme Court's ruling in Storer v. Brown, supra, and American Party of Texas v. White, supra.  See El Paso v. Carroll, 108 S.W. 2d 251 (Tex. Civ. App. - El Paso 1937, writ ref.), (presumption that legislation was written with knowledge of what the courts have held to be the legislature's power). The legislature thus was aware that it could enact a constitutional statute which required independents to show that they had a satisfactory level of community support and which sought to preserve party integrity. The legislature also had before it as a model article 13.50 of the Election Code which related to ballot access by non-partisan or independent candidates for offices other than president, vice president and presidential elector. Article 13.50 of the Election Code provided that "no person who has voted at either the general primary election or the runoff primary election of any party shall sign an application in favor of anyone for an office for which a nomination was made at either such primary election."

Legislative history indicates that the bill's sponsor wished to exercise some degree of control over access to the ballot.  Tape of public hearing, April 20, 1977, Senate State Affairs Committee, filed in Senate Staff Services Office.

We believe the legislature's intent to reasonably control access to the ballot by independents, and the policies enumerated by the Supreme Court which justify and permit its doing so, can best be served by utilization of the common meaning of "presidential primary" in article 11.01b of the Election Code  rather than a narrow, technical construction of those words based on a statute which is inapplicable on its face. We believe the presidential preference votes included in the general primaries of both parties constitute presidential primaries for purposes of this statute. Persons who voted in the primary of either party indicated their allegiance to it and revealed that they did not provide truly independent community support for an independent candidate.

We believe that the differences in the primaries held by the two parties are too slight to justify treating them differently,  particularly when examined in light of the policies underlying article 11.01b of the Election Code.  Participation in the Democratic

primary was a prerequisite to participation in the process of choosing delegates to the national convention. Cf. Thorne v. Jones, 57 N.W. 2d 40 (Mich. 1953)(caucus is synonymous with primary). Even the "binding" Republican primary is binding only to a degree. Republican delegates to the national convention are bound for three ballots unless released or unless the candidate receives less than 20 percent of the national convention vote on the second ballot. R. Cook, "Carter, Reagan are strong favorites in Texas," 38 Congressional Quarterly, 1012 (1980). Neither primary actually elected anybody, since delegates to the national convention will be chosen at the state convention. Rules of the Republican Party, Rule 38a; Election Code art. 13.58. We believe the term "presidential primary" as it appears in article 11.01b of the Election Code should be defined to include a non-binding presidential preference primary.

This definition moreover renders article 11.01b of the Election Code consistent with article 13.50 of the Election Code on ballot access by other independents. Article 13.50 of the Election Code excludes from signing a petition for an independent anyone who voted in the general primary or run-off primary of a party which nominated a candidate for that office. It does not matter whether the voter actually participated in the selection of that candidate. In fact, by participating only in the run-off primary he disqualifies himself from signing an independent's petition for any office for which a nomination was made in the general primary. Although he did not cast his vote, he nonetheless has aligned himself with a party that made a nomination for that office.

The Secretary of State has issued an opinion construing the term "presidential primary" as it appears in article 11.01b of the Election Code to mean "an election held for the purpose of selecting a portion of the delegates to represent the state at the national conventions." See Election Law Interpretation No. GWS-5. The opinion determines that the Republican Party held such a primary, while the Democratic Party did not, and concludes that persons who voted in the Democratic primary may sign petitions to place independent candidates for president and vice president on the ballot in the general election.

The Secretary of State is responsible for interpreting the election laws. Election Code art. 1.03. Administrative constructions are entitled to weight, Ex parte Roloff, 510 S.W. 2d 913 (Tex. 1974), but they will be disregarded when contrary to the statute. Firestone Tire and Rubber Co. v. Bullock, 573 S.W. 2d 498 (Tex. 1978). This office has in the past reviewed interpretations of the Election Code made by the Secretary of State and made its own determination as to the correct interpretation. See e.g., Attorney General Opinions MW-178, MW-175, MW-166 (1980); M-284 (1968).

All provisions of a code relating to the same matter will be harmonized and given effect. District Trustees of District No. 46 and Freestone County v. Trustees of Freestone County, 186 S.W. 2d 378 (Tex. Civ. App. - Waco 1945 no writ). The Secretary's definition of "presidential primary" for purposes of article 11.01b of the Election Code is inconsistent with article 13.58 of the Election Code as well as with the rules of the Republican party. In the latter provision, the Legislature assumes that political parties will elect their delegates to the national convention at the state convention. See also Rules of the Republican Party of Texas, Rule 38a. In enacting

article 11.01b of the Election Code it would not have made the contrary assumption that the parties elected delegates at presidential primaries. If the Secretary's definition of presidential primary i.e., an election to select delegates to a national convention, is correct, then neither party held a presidential primary this year. In fact, no political party could hold a presidential primary as long as they continue to elect all delegates at the state convention. In enacting a statute, it is presumed that the entire statute is intended to be effective and that a just and reasonable result is intended. Code Construction Act, V.T.C.S., art. 5429b-2, §3.01. The Secretary's definition of presidential primary renders article 11.01b of the Election Code unreasonable and ineffective in part. Therefore we decline to follow it.

In our opinion, therefore, the non-binding presidential preference vote held by the Democratic Party and the presidential preference primary held by the Republican Party in 1980 both constitute presidential primaries for purposes of article 11.01b of the Election Code. Consequently, persons who voted in either primary may not sign petitions for an independent candidate for president to appear on the general election ballot.

## S U M M A R Y

Persons who voted in the Democratic or Republican general primary election may not sign a peition for an independent candidate for president to appear on the general election ballot.

Very truly yours,

**MARK WHITE**
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Jon Bible
Susan Garrison
Rick Gilpin