Office of the Attorney General · State of Texas



October 13, 1999

The Honorable Judith Zaffirini
Chair, Human Services Committee
Texas State Senate
P.O. Box 12068, 1E.5
Austin, Texas 78711-2068

Opinion No. JC-0125

Re: Authority of county to provide law enforce-
ment services in a municipality within its
boundaries (RQ-0073-JC)

Dear Senator Zaffirini:

You ask whether Dimmit County may provide law enforcement services in Carrizo Springs, a city located within the boundaries of the county, in the absence of an interlocal agreement between the city and the county. The law enforcement services in question are provided by the sheriff, whose office is funded by the commissioners court. *See* TEX. CONST. art. V, § 23 (establishing elective office of county sheriff); TEX. LOC. GOV'T CODE ANN. § 152.011 (Vernon 1999) (commissioners court shall set amount of compensation, office and travel expenses and all other allowances for county officers); Tex. Att'y Gen. Op. No. H-1123 (1978) at 2 (law enforcement activities of county are vested in officers such as sheriff and district attorney, not in the commissioners court). We conclude that the sheriff is authorized to provide law enforcement services in Carrizo Springs absent an interlocal agreement between the county and the city. You also ask whether the fact that the residents of Carrizo Springs pay county taxes obligates the county to provide these services within the boundaries of Carrizo Springs, and whether the sheriff is obligated to provide law enforcement services within the city. We conclude that the sheriff is authorized to decide, in the exercise of reasonable discretion, how to allocate the law enforcement services of his office to different areas in the county, and the fact that municipal residents pay county taxes does not dictate a particular level of county law enforcement protection in municipalities.

A letter that you have received from the County Judge of Dimmit County ("the county") provides the background for your request. *See* Letter from Honorable Charles D. Johnson, Dimmit County Judge, to Honorable Judith Zaffirini, Texas Senate (May 5, 1999) (on file with Opinion Committee) [hereinafter "Johnson Letter"]. It states that the City of Carrizo Springs does not fund a municipal police department. *See id.* at 1. More than half of the approximately 10,500 residents of Dimmit County live in Carrizo Springs, and about ninety percent of the county's crimes occur there. *Id.* In 1989, Dimmit County and the City of Carrizo Springs entered into an interlocal "Agreement for Provision of Additional Services by Sheriff's Department" whereby the county agreed to provide law enforcement services to the city for $60,000 a year. *Id.*; *see also* TEX. GOV'T CODE ANN. ch. 791 (Vernon 1994 & Supp. 1999) (Interlocal Cooperation Act); Tex. Att'y Gen. LO-98-079 (interlocal agreement between municipal utility district and county for provision

of security patrols in district by constable's and sheriff's office). The county terminated the agreement in 1998 after the city failed to accede to its requests for additional compensation. *See* Johnson Letter at 2. However, the sheriff continues to direct deputies to patrol the city, make security checks of downtown businesses, answer calls for assistance, provide dispatcher services, investigate crimes, file offense and arrest reports, make arrests within the boundaries of the city, and in general, provide law enforcement services there, in the absence of any written agreement between the city and county. *Id.*

You submit the following questions about the sheriff's provision of law enforcement services in Carrizo Springs under the circumstances outlined by the county judge:

> [May] the County provide law enforcement services within the municipal boundaries of the City of Carrizo Springs without an Interlocal Agreement?
>
> . . . .
>
> Is the county obligated to provide police protection to municipal residents because they pay county taxes?
>
> . . . .
>
> Are the sheriff and his deputies obligated to respond within the boundaries of a municipality upon the report of a violation or impending violation of the Texas Penal Code without an interlocal governmental agreement for law enforcement between the municipality and the county?

*Id.* at 1, 3.

It is suggested that the sheriff's provision of law enforcement services within Carrizo Springs in the absence of compensation to the county violates article III, section 52 of the Texas Constitution, which provides that the legislature "shall have no power to authorize any county, city, town, or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." TEX. CONST. art. III, § 52(a). This provision prevents a county from donating its funds or anything of value to an independent municipal corporation. *See San Antonio Indep. Sch. Dist. v. Board of Trustees*, 204 S.W.2d 22, 25 (Tex. Civ. App.–El Paso 1947, writ ref'd n.r.e.).

The sheriff's provision of law enforcement services within the boundaries of an incorporated municipality in the county does not violate article III, section 52(a) of the Texas Constitution. A sheriff is an elected county officer whose "duties . . . shall be prescribed by the Legislature." TEX. CONST. art. V, § 23. Article 2.17 of the Code of Criminal Procedure provides that "[e]ach sheriff

shall be a conservator of the peace in his county." TEX. CODE CRIM. PROC. art. 2.17 (Vernon 1977). This provision authorizes the sheriff to perform law enforcement duties throughout the county, including those areas of the county that lie within the boundaries of incorporated cities. *See Weber v. City of Sachse*, 591 S.W.2d 563, 566-67 (Tex. Civ. App.–Dallas 1979, writ dism'd) (sheriff's authority to deploy deputies within boundaries of incorporated cities); *Newburn v. Durham*, 31 S.W. 195 (Tex. 1895) (where statute gives city marshal same authority as sheriff of a county under laws of state, marshal may make arrest anywhere in county). Thus, the sheriff's jurisdiction as conservator of the peace in Dimmit County includes the area within the boundaries of Carrizo Springs, and no contractual arrangement between the city and county or compensation to the county is necessary for him to exercise law enforcement powers in the city. In performing law enforcement services in Carrizo Springs, the sheriff does not donate county funds or any other thing of value to the city in violation of article III, section 52 of the Texas Constitution but merely acts within the authority of his office.

You next inquire whether, in the absence of an interlocal contract, the county is obligated to provide police protection in Carrizo Springs, because municipal residents pay county taxes, and whether the sheriff and his deputies are obligated to respond within the boundaries of a municipality to the report of a violation or impending violation of the Texas Penal Code. The opinion in *City of Sachse,* which addresses the county sheriff's provision of law enforcement services within incorporated municipalities in the county, provides answers to your questions. The Dallas County Commissioners Court terminated funding for twenty sheriff's deputies, and the sheriff ceased to maintain regular patrols within the limits of incorporated municipalities within Dallas County, although the sheriff's department still responded to calls by city residents. *See City of Sachse,* 591 S.W.2d at 565, 568. Two incorporated municipalities in the county brought suit against the sheriff, county judge, and county commissioners of Dallas County, seeking an injunction requiring the commissioners court to fund and the sheriff to provide at least five deputies to patrol within the boundaries of each city. *Id.* at 565. The court determined as follows:

> Although the sheriff has the duty to conserve the peace within the county, his decisions as to the deployment of law enforcement officers within the county are left to his discretion and judgment since this matter is not specifically prescribed by law. A court may properly intervene only where a public official fails to perform a mandatory duty or oversteps the bounds of his discretion. The law imposes no mandatory duty on the sheriff to supply a certain level of law enforcement to the plaintiff municipalities.

*Id.* at 567 (citation omitted).

Because no statute obligates the sheriff and his deputies to provide a specific level of law enforcement within the boundaries of an incorporated municipality, it is for the sheriff, in the exercise of reasonable discretion, to determine how to allocate the law enforcement services of his

office to different parts of the county, including parts of the county within the boundaries of an incorporated city.

The plaintiff cities in *City of Sachse* also argued that they were entitled to the same county police protection as provided in the unincorporated areas of Dallas County because their citizens paid the same county taxes as residents of the unincorporated areas. *See id.* The court determined that "[e]qual protection does not entitle every citizen to receive equal benefits each time government money is spent." *Id.* Absent invidious discrimination based on a suspect classification such as race or sex, equal protection requires only that the county government have a rational basis for providing different levels of law enforcement services to different areas of the county. *See id.* Upon review of the relevant facts, the court determined that the commissioners court and the sheriff had a rational basis for an unequal deployment of county sheriff's patrols between the areas within the limits of the plaintiff municipalities and the unincorporated areas of the county.

Accordingly, we conclude that the Dimmit County sheriff is authorized by section 2.17 of the Code of Criminal Procedure to perform law enforcement services throughout the county, and no interlocal agreement between the county and the government of an incorporated city within the county is necessary to enable the sheriff to provide these services within the city's boundaries. The fact that municipal residents pay county taxes does not require the county sheriff to provide an equal level of law enforcement protection within municipal boundaries as it does in the unincorporated areas. The county government must have a rational basis for providing different levels of law enforcement services to different areas of the county. The sheriff is authorized to respond to calls for law enforcement help within the boundaries of a municipality despite the absence of an interlocal agreement between the city and the county. It is for the sheriff, in the exercise of reasonable discretion, to determine how to allocate the law enforcement services of his office to different parts of the county.

### S U M M A R Y

The sheriff is conservator of the peace in the county and has authority to perform law enforcement services throughout the county, including the area within the boundaries of an incorporated city, absent an interlocal contract with the city. It is for the sheriff, in the exercise of reasonable discretion, to determine how the law enforcement efforts of his office should be allocated to different areas of the county. The fact that municipal residents pay county taxes does not require the county sheriff to provide an equal level of law enforcement protection within municipal boundaries as he does in the unincorporated areas, as long as there is a rational basis for providing different levels of law enforcement services to different areas of the county.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee