ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 12, 2008

The Honorable James L. Keffer
Chair, Committee on Ways and Means
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0664

Re: Whether a county may grant funds to a school
district or charter school   (RQ-0689-GA)

Dear Representative Keffer:

You ask whether the Texas Constitution prohibits a county from "providing a grant or any other financial assistance to a school district or charter school solely for educational purposes[.]"[1] You pose the question broadly without specifying any particular kind of grant or assistance or a particular educational purpose that might be at issue. Accordingly, we address the question broadly.[2]

You specifically reference Article III of the Texas Constitution. Request Letter, *supra* note 1, at 1. Article III, sections 51 and 52 are complementary provisions concerning governmental grants of public money. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 739–40 (Tex. 1995) (observing the complementary purposes of article III, sections 51 and 52 of the Texas Constitution). Article III, Section 51 prohibits the Legislature from granting or authorizing a grant of "public moneys to any individual, association of individuals, municipal or other corporations whatsoever," except for "cases of public calamity." TEX. CONST. art. III, § 51. Section 52(a) expressly pertains to counties, prohibiting the Legislature from authorizing a county and other political subdivisions "to grant public money or thing of value in aid of, or to any individual, association, or corporation

---

[1]*See* Letter from Honorable James L. Keffer, Chair, Committee on Ways and Means, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas (Mar. 17, 2008) (on file with the Opinion Committee, *also available at* www.texasattorneygeneral.gov) [hereinafter Request Letter].

[2]By "school district" we assume you mean an independent school district, by far the most common kind of school district. *See* TEX. EDUC. CODE ANN. § 11.011 (Vernon 2006) (organization of independent school district); *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 755 n.29 (Tex. 2005) (stating that at the time of the decision there were 1,031 independent school districts and six common school districts). Also, by "charter school" we assume you mean an open–enrollment charter school. *See* TEX. EDUC. CODE ANN. § 12.101 (Vernon 2006) (authorizing the State Board of Education to grant a charter for an open–enrollment charter school to eligible entities). Accordingly, we limit our analysis to a county's grant or assistance to independent school districts and open-enrollment charter schools.

whatsoever" with certain exceptions. *Id.* § 52(a). Your question most directly implicates article III, section 52(a).[3] *See* Request Letter, *supra* note 1, at 1.

Article III, section 52(a) prohibits only gratuitous grants of public money by a political subdivision. *See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002) (emphasizing that "'to grant public money' [in article III, section 52(a)] means that the Legislature cannot require *gratuitous* payments"). A political subdivision's payment is not gratuitous if it receives return consideration. *Id.* Moreover, section 52(a) does not prohibit a political subdivision's payment if it accomplishes a public purpose. *Id.* at 383–84. The Supreme Court of Texas has established a three-part test to determine when a statute authorizing a payment of public money accomplishes a public purpose:

> Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Id.* at 384.

Section 52(a) has been construed to prohibit political subdivisions such as counties from gratuitously granting its funds to another political subdivision. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 842 (Tex. 2000) (determining that article III, sections 51 and 52 would not permit a city to gratuitously pay "the City's 'public money'" to a school district); *Harris County Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1104 (Tex. 1940) (holding that "under the plain terms of Section 52 of Article III, . . . no part of the funds of Harris County can be pledged or used to pay the bonds of [the Harris County Flood] District"); *San Antonio Indep. Sch. Dist. v. Bd. of Trs. of San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22, 25 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.) (holding that under article III, sections 51 and 52 a "city cannot donate its funds to an independent municipal corporation such as an independent school district").[4] In two of these cases, the courts held that a political subdivision may not constitutionally make a gratuitous payment to an independent school district. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 842; *San Antonio Indep. Sch. Dist.*, 204 S.W.2d at 25; *see also* Tex. Att'y Gen. Op. No. JM-1255 (1990) at 7 (advising that a city may not use its municipal bond powers to assist a school district in acquiring a school

---

[3]Without assuming additional facts, we are not aware of constitutional provisions other than article III, sections 51 and 52 that are directly implicated by your question.

[4]*But cf. Tex. Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 384 (holding that article III, section 52(a) "does not prohibit transfers to a state agency"); *Edgewood Indep. Sch. Dist.*, 917 S.W.2d at 740 n.22 (noting but not deciding the issue of whether article III, section 52(a) might be limited in its application to prohibit grants to private individuals or entities).

building). Consequently, we conclude that a county may not constitutionally make a gratuitous grant of its public money or other thing of value to an independent school district.

We have located no judicial decision that considers the constitutionality of a political subdivision granting its funds to a charter school. However, an open-enrollment charter school is a "part of the public school system of this state." TEX. EDUC. CODE ANN. § 12.105 (Vernon 2006). The Legislature has determined that an open-enrollment charter school is a "political subdivision" for various purposes. *See, e.g., id.* § 12.1053(b)(2) (concerning procurement of professional services); TEX. LOC. GOV'T CODE ANN. §§ 176.001–.012 (Vernon 2008) (providing for certain disclosure by local government officers and providing public access to certain information). Article III, section 52 of the Texas Constitution prohibits a gratuitous payment of public money to "any individual, association, or corporation whatsoever." TEX. CONST. art. III, §52(a). We see no basis for distinguishing a charter school from an independent school district with respect to gratuitous payment of a county's public money. *Cf Miller v. Davis*, 150 S.W.2d 973, 978 (Tex. 1941) (defining a "public corporation" as "one 'connected with the administration of the government, and the interests and franchises of which are the exclusive property and domain of the government itself'" (citation omitted)); *Am. Liberty Oil Co. v. State*, 125 S.W.2d 1107, 1109 (Tex. Civ. App.—Texarkana 1939, no writ) (holding that "[s]chool districts are local public corporations of the same general character as municipal corporations [and that they] are quasi-municipal corporations"). Consequently, a court would likely conclude that article III, section 52 applies to prohibit a county from gratuitously donating county funds to a charter school, the same as to an independent school district.

Although a county may not gratuitously contribute its funds to another political subdivision, it may transfer funds to another political subdivision to accomplish a county purpose. *See State ex rel. Grimes County Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265–66 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd) (holding that municipalities' contracts with authorized power agency to accomplish municipal purpose does not offend article III, section 52); *see also* Tex. Att'y Gen. Op. No. GA-0601 (2008) at 3 n.5 (stating that "[c]onsistent with article III, section 52(a) of the Texas Constitution, a county may transfer funds to another political subdivision *only* to accomplish a county purpose" (emphasis added)). But a political subdivision may pay or transfer its funds to another political entity only if two requirements are met: (1) the purpose of the payment or transfer must be within the political subdivision's powers, and (2) the political entity receiving the funds must be obligated by statute or contract to use the funds for that purpose. *State ex rel. Grimes County Taxpayers Ass'n*, 565 S.W.2d at 265.[5]

---

[5]*See also* Tex. Att'y Gen. Op. No. GA-0558 (2007) at 6 n.6 (advising that "[a] political subdivision may, consistently with article III, section 52(a), transfer funds to another political subdivision, but only if the funds are used for a purpose for which the granting political subdivision is authorized to expend money"; also observing that "[t]he expenditure of municipal funds for school district purposes generally does not serve a municipal purpose and is not within a municipality's scope of authority," so that such an expenditure would violate article III, section 52(a) of the Texas Constitution); Tex. Att'y Gen. JC-0055 (1999) at 5 (advising that county could constitutionally provide auditor services to the Harris County Department of Education without reimbursement when the latter performs functions for the benefit of the county that would otherwise be performed by the county government); Tex. Att'y Gen. Op. No.
(continued...)

Whether a particular transfer of county funds to another political subdivision serves a county purpose is for the commissioners court to determine in the first instance, subject to judicial review for abuse of discretion. *See* Tex. Att'y Gen. Op. No. GA-0552 (2007) at 2. A county's powers do not include all civic functions, however. A county, acting through its commissioners court, has only those powers expressly granted by the Texas Constitution or by statute or necessarily implied to accomplish the powers expressly conferred. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). Neither the constitution nor any statute of which we are aware authorizes a county to expend county funds for purposes of an independent school district or an entity operating an open-enrollment charter school. Nor are we aware of a statute granting counties general responsibility or authority for elementary or secondary education in the county.[6] While we do not rule out the possibility that a particular county purpose could be served by granting county money "solely for educational purposes," a court would likely conclude that a grant of county funds for the general purposes of an independent school district or charter school is not within the county's scope of authority.

---

[5](...continued)
JM-1255 (1990) at 7 (determining that a city may not constitutionally use its municipal bond powers to assist a school district to acquire a school building and noting the distinction between a municipality's powers and a school district's powers).

[6]Education Code section § 12.101 authorizes the State Board of Education to grant a charter to an "eligible entity," including a "governmental entity." *See* TEX. EDUC. CODE ANN. § 12.101(a)(4) (Vernon 2006). Although a "governmental entity," arguably a county, could qualify. We understand your question to concern charter schools operated by an entity other than a county, however.

## S U M M A R Y

Article III, section 52(a) of the Texas Constitution does not permit a county to gratuitously grant county funds to an independent school district or open-enrollment charter school.  A county may make a payment to such a school district or charter school only to accomplish a county purpose.  A court would likely determine that a county does not have the authority to grant county funds for general purposes of an independent school district or open-enrollment charter school.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee