

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

March 9, 2015

The Honorable Doug Miller
Chair, Special Purpose Districts Committee
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0008

Re: Whether the Edwards Aquifer Authority may provide funding to the U.S. Fish & Wildlife Service for the implementation of a refugia program (RQ-1220-GA)

Dear Representative Miller:

You ask three questions related to whether the Edwards Aquifer Authority ("EAA") may provide funding to the U.S. Fish & Wildlife Service ("USFWS") for the implementation of a refugia program under certain terms and conditions proposed by USFWS.[1]

EAA is "a special regional management district" created by the Legislature through the Edwards Aquifer Authority Act ("EAA Act").[2] The stated purposes of EAA are "to protect terrestrial and aquatic life, domestic and municipal water supplies, the operation of existing industries, and the economic development of the state." EAA Act § 1.01. Among other duties, EAA is responsible for the regulation of withdrawals of groundwater from the aquifer by well owners. *Id.* § 1.15. EAA has recognized that performing its statutory duties could result in the "taking" of endangered species, which is prohibited by federal law under the Endangered Species

---

[1]Letter from Honorable Doug Miller, Co-Chair, Edwards Aquifer Legislative Oversight Comm. to Honorable Greg Abbott, Tex. Att'y Gen. at 2–3 (Sept. 3, 2014), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]EAA Act § 1.01, http://www.edwardsaquifer.org (Legislation and Rules). The EAA Act remains uncodified. Citations are to the EAA Act's current sections, without separate reference to amending sections. Official citations are included in the session laws. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2350, *amended by* Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen Laws 3280; Act of May 29, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505; Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634; Act of May 25, 2001, 77th Leg., R.S., ch. 1192, 2001 Tex. Gen. Laws 2696; Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.60–.62, 6.01–.05, 2001 Tex. Gen. Laws 1991, 2021–22, 2075–76; Act of May 25, 2001, 77th Leg., R.S., ch. 1192, 2001 Tex. Gen. Laws 2696; Act of June 1, 2003, 78th Leg., R.S., ch. 1112, § 6.01(4), 2003 Tex. Gen. Laws 3188, 3193; Act of May 23, 2007, 80th Leg., R.S., ch. 510, 2007 Tex. Gen. Laws 900; Act of May 28, 2007, 80th Leg., R.S., ch. 1351, §§ 2.01–2.12, 2007 Tex. Gen. Laws 4612, 4627–34; Act of May 28, 2007, 80th Leg., R.S., ch. 1430, §§ 12.01–12.12, 2007 Tex. Gen. Laws 5848, 5901–09; Act of May 21, 2009, 81st Leg., R.S., ch. 1080, 2009 Tex. Gen. Laws 2818.

Act ("ESA").  16 U.S.C.A. § 1538(a)(1)(B) (West 2010).[3]  Therefore, EAA, joined by several other entities, sought and obtained from USFWS an incidental take permit.[4]  The Permit precludes liability under the ESA for any taking that is "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." *Id.* § 1539(a)(1)(B).

To obtain the Permit, the ESA required EAA and other stakeholders to submit a plan that specified the steps they would take to "minimize and mitigate" the impact of any taking. *Id.* § 1539(a)(2)(A)(i–ii).  Accordingly, EAA and a number of other entities prepared a habitat conservation plan outlining specific measures that the applicants would undertake to protect the covered species.[5]  USFWS approved the Plan and issued the Permit in February 2013.  Permit at 1.  "The authorization granted by [the Permit is] subject to full and complete compliance with, and implementation of, the" Plan. *Id.*

As part of the Plan, EAA is required to "support and coordinate with the USFWS on the work relating to the . . . operation and maintenance of a series of off-site refugia at USFWS's San Marcos, Uvalde, and Inks Dam facilities." *See* Plan, § 5.1.1.  You describe a refugia in this context as "an off-site facility designed and dedicated to the care, housing, and maintenance of individuals or populations of Covered Species in an artificial habitat to protect them from and to avoid the negative effects of drought disturbance, disease outbreaks, and water quality impairment in the Comal and San Marcos Springs and Rivers ecosystems." Request Letter at 7.  You explain that USFWS has proposed "a management contract that would contain the terms and conditions under which it would be willing to contract with the EAA to implement the refugia program." *Id.* at 8.  Under the terms of that proposed contract, USFWS would acquire or construct buildings, facilities, equipment and supplies, which would be owned by USFWS and located on federal land. *Id.*

You first ask whether EAA may provide funding to USFWS to implement the refugia program if the "buildings, works, facilities, and equipment must be owned solely by [USFWS] and be physically located on real property owned by" USFWS. *Id.* at 4.  You are specifically concerned that EAA's provision of funding to USFWS may implicate the prohibition against gratuitous grants of public credit and funds under article III, section 52(a) of the Texas Constitution. *Id.* at 13.

Article III, section 52 prohibits the Legislature from authorizing a political subdivision "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association

---

[3]Under the ESA, to "take" is defined as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C.A. § 1532(19) (West 2010).  Section 1538(a)(1)(B) provides, with certain exceptions, that "with respect to any endangered species of fish or wildlife listed pursuant to section 1533 of this title, it is unlawful for any person subject to the jurisdiction of the United States to . . . take any such species within the United States or the territorial sea of the United States." *Id.* § 1538(a)(1)(B).

[4]*See* EAA Act § 1.11(d)(9) (expressly authorizing the EAA to hold permits under the ESA); USFWS Permit TE63663A-0,http://www.eahcp.org/files/admin-records/NEPA-and-HCP/USFWS_Permit_03-18-2013_rcvd_1030_ a.m._Final.pdf ("Permit").

[5]*See* Edwards Aquifer Authority Recovery Implementation Program, Habitat Conservation Plan (Nov. 2012) ("Plan"), http://www.eahcp.org/ ("Documents and Publications," "Habitat Conservation Plans and Appendices").

or corporation." TEX. CONST. art. III, § 52(a). Answering your question first requires a determination as to whether a court would consider USFWS, a federal agency, an "individual, association or corporation" for purposes of article III, section 52. *Id.* Courts have considered some local governmental entities, such as school districts, to be corporations for purposes of article III, section 52. *See, e.g., San Antonio Indep. Sch. Dist. v. Bd. of Trs. of San Antonio Elec. & Gas Sys.,* 204 S.W.2d 22, 25 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.) (concluding that article III, section 52 prohibits a city from donating "its funds to an independent municipal corporation such as an independent school district"). The Texas Supreme Court, however, has concluded that a state agency does not "qualify as an individual, association or corporation under section 52(a)" and that the provision therefore "does not prohibit transfers to a state agency." *Tex. Mun. League Intergov'l Risk Pool v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 384 (Tex. 2002); *see also Harris Cnty. Flood Control Dist. v. Mann,* 140 S.W.2d 1098, 1103 (Tex. 1940) (orig. proceeding) (concluding that statutes authorizing a district to cooperate with the federal government in carrying out the purposes of the district did not violate article III, section 52). Although we find no case expressly stating that a federal agency is not an "individual, association or corporation" for purposes of section 52, the same rationale that applies to a state agency would likely apply to a federal agency. Thus, a court is likely to conclude that a federal agency like USFWS is not an "individual, association or corporation" under article III, section 52 and that the constitutional provision would not prohibit EAA from providing funds to USFWS to implement the refugia program consistent with EAA's purposes.

In your second question, you ask whether EAA has the statutory authority to enter into a non-joint refugia project contract with USFWS. Request Letter at 2. The Legislature has granted EAA broad authority to "enter into contracts." EAA Act § 1.11(d)(2); Tex. Att'y Gen. Op. No. GA-0708 (2009) at 3. Furthermore, the EAA has "all of the powers, rights, and privileges necessary to manage, conserve, preserve, and protect the aquifer," expressly including the authority granted by chapters 36, 49, and 51 of the Water Code.[6] EAA Act § 1.08. Thus, if EAA determines that entering into the refugia project contract with USFWS under the terms USFWS proposes is necessary to manage, conserve, preserve and protect the aquifer, a court would likely conclude that the EAA has statutory authority to do so.[7]

You suggest that two provisions in chapter 49 of the Water Code may prohibit the EAA from contracting with USFWS "unless and only if the project is, in fact, *jointly* constructed, financed, owned, and operated." Request Letter at 20. The two provisions you raise are sections

---

[6]Subsection 1.08(a) of the EAA Act provides that the EAA's authority includes that granted by chapters 50, 51 and 52 of the Water Code. Chapters 50 and 52 were repealed by the Legislature in 1995 and replaced with chapters 49 and 36, respectively. Courts have since held that the recodified chapters apply to the EAA. *See, e.g., In re Edwards Aquifer Auth.,* 217 S.W.3d 581, 587–88 (Tex. App.—San Antonio 2006, orig. proceeding).

[7]You also ask in relation to this question whether EAA may provide advance funding to USFWS for construction, equipment and supplies "without contravening the gratuitous grant prohibition of Article III, Section 52(a)." Request Letter at 17. Because we have already concluded that a court is unlikely to consider USFWS an "individual, association or corporation" under article III, section 52, we do not address this question further.

49.213(a) and 49.227, which authorize special law districts to contract for joint projects with other entities. Subsection 49.213(a) provides:

> A district may contract with a person or any private or public entity for the joint construction, financing, ownership, and operation of any works, improvements, facilities, plants, equipment, and appliances necessary to accomplish any purpose or function permitted by a district, or a district may purchase an interest in any project used for any purpose or function permitted by a district.

TEX. WATER CODE ANN. § 49.213(a) (West 2008). Section 49.227 states:

> A district or water supply corporation may act jointly with any other person or entity, private or public, whether within the State of Texas or the United States in the performance of any of the powers and duties permitted by this code or any other laws.

*Id.* § 49.227. The language of sections 49.213(a) and 49.227 provides affirmative grants of authority for districts to act jointly with other entities; however, nothing in either provision suggests that those statutes are intended to limit the EAA's broad contracting authority granted in the EAA Act.

Your final question asks whether chapter 49, subchapter I of the Water Code will apply to the refugia contract between EAA and USFWS. Request Letter at 2–3. Chapter 49, subchapter I is titled "Construction, Equipment, Materials and Machinery Contracts," and it outlines a number of procurement requirements for "[a]ny contract made by the board for construction work." TEX. WATER CODE ANN. § 49.271(a) (West Supp. 2014); *see generally id.* §§ 49.271–.279 (West 2008 & Supp. 2014). In particular, you question whether section 49.276 of the Water Code prohibits EAA from making advance payments to USFWS for the construction of the additional improvements necessary to operate the refugia program.[8] As you describe it, although the proposed management contract between EAA and USFWS will require USFWS to either acquire or construct facilities and improvements, EAA will be contracting for USFWS's services to operate the refugia program. You explain that USFWS will have "[c]ontrol over the design, construction and equipment plans and specifications," which suggests that the contract between EAA and USFWS itself may not be a contract for construction work, making subchapter I inapplicable. Request Letter at 8. Even if a court were to conclude that the contract between EAA and USFWS were a contract for construction work, section 49.278 excepts certain contracts from the application of subchapter I, including contracts for "professional services" and "contracts for

---

[8]Subsection 49.276(b) of the Water Code provides that "[t]he district will make progress payments under construction projects monthly as the work proceeds, or at more frequent intervals as determined by the board or its designee, on estimates approved by the board or its designee." TEX. WATER CODE ANN. § 49.276(b) (West 2008).

services or property for which there is only one source or for which it is otherwise impracticable to obtain competition." TEX. WATER CODE ANN. § 49.278(a)(2), (4) (West 2008). Under the terms of the contract, USFWS is the only source that may provide and operate a refugia program. For these reasons, a court would likely conclude that chapter 49, subchapter I does not apply to a contract between EAA and USFWS for the operation of a refugia program.[9] You do not ask, and we do not address, the propriety of USFWS requiring as a condition of an incidental take permit that the applicant fund structures on USFWS property or fund USFWS employees.

---

[9]You do not ask, and we do not address, the constitutional authority of the federal government to regulate the taking of the endangered species that are part of the Plan. *See GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622, 640–41 (5th Cir. 2003) (holding that application of the ESA's take provision to intrastate species is a constitutional exercise of the Commerce Clause power); *but see People for the Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv.*, No. 2:13–cv–00278–DB, 2014 WL 5743294, at *8 (D. Utah Nov. 5, 2014) (holding that the Commerce Clause "does not authorize Congress to regulate takes of a purely intrastate species that has no substantial effect on interstate commerce").

## S U M M A R Y

Article III, section 52 of the Texas Constitution prohibits the Legislature from authorizing a political subdivision "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation." Based on Texas Supreme Court precedent, a court is likely to conclude that the United States Fish and Wildlife Service is not an "individual, association or corporation" under article III, section 52, and that the constitutional provision therefore would not prohibit the Edwards Aquifer Authority from providing funds to the United States Fish and Wildlife Service to implement a refugia program.

If the Edwards Aquifer Authority determines that entering into the refugia project contract with the United States Fish and Wildlife Service under the terms the Service proposes is necessary to manage, conserve, preserve and protect the aquifer, a court would likely conclude that the Edwards Aquifer Authority Act provides statutory authority to do so.

A court would likely conclude that chapter 49, subchapter I of the Water Code does not apply to a contract between the Edwards Aquifer Authority and the United States Fish and Wildlife Service for the operation of a refugia program.

Very truly yours,

*Ken Paxton*

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee
Assistant Attorney General, Opinion Committee